## SOUTH DAKOTA *v.* OPPERMAN

No. 75–76.   Argued March 29, 1976—Decided July 6, 1976

*William J. Janklow,* Attorney General of South Dakota, argued the cause for petitioner. With him on the brief was *Earl R. Mettler,* Assistant Attorney General.

*Robert C. Ulrich,* by appointment of the Court, 423

U. S. 1012, argued the cause for respondent *pro hac vice.* With him on the brief were *Lee M. McCahren* and *John F. Hagemann.*\*

MR. CHIEF JUSTICE BURGER delivered the opinion of the Court.

We review the judgment of the Supreme Court of South Dakota, holding that local police violated the Fourth Amendment to the Federal Constitution, as applicable to the States under the Fourteenth Amendment, when they conducted a routine inventory search of an automobile lawfully impounded by police for violations of municipal parking ordinances.

(1)

Local ordinances prohibit parking in certain areas of downtown Vermillion, S. D., between the hours of 2 a. m. and 6 a. m. During the early morning hours of December 10, 1973, a Vermillion police officer observed respondent's unoccupied vehicle illegally parked in the restricted zone. At approximately 3 a. m., the officer issued an overtime parking ticket and placed it on the car's windshield. The citation warned:

> "Vehicles in violation of any parking ordinance may be towed from the area."

At approximately 10 o'clock on the same morning, an-

_____

*Briefs of *amici curiae* urging reversal were filed by *Evelle J. Younger,* Attorney General, *Jack R. Winkler,* Chief Assistant Attorney General, *S. Clark Moore,* Assistant Attorney General, and *Kent L. Richland* and *Robert R. Anderson,* Deputy Attorneys General, for the State of California; by *Theodore L. Sendak,* Attorney General, and *Donald P. Bogard,* Executive Assistant Attorney General, for the State of Indiana; by *Toney Anaya,* Attorney General, and *Warren O. F. Harris,* Deputy Attorney General, for the State of New Mexico; and by *Wayne W. Schmidt* for Americans for Effective Law Enforcement, Inc.

other officer issued a second ticket for an overtime parking violation. These circumstances were routinely reported to police headquarters, and after the vehicle was inspected, the car was towed to the city impound lot.

From outside the car at the impound lot, a police officer observed a watch on the dashboard and other items of personal property located on the back seat and back floorboard. At the officer's direction, the car door was then unlocked and, using a standard inventory form pursuant to standard police procedures, the officer inventoried the contents of the car, including the contents of the glove compartment, which was unlocked. There he found marihuana contained in a plastic bag. All items, including the contraband, were removed to the police department for safekeeping.[1] During the late afternoon of December 10, respondent appeared at the police department to claim his property. The marihuana was retained by police.

Respondent was subsequently arrested on charges of possession of marihuana. His motion to suppress the evidence yielded by the inventory search was denied; he was convicted after a jury trial and sentenced to a fine of $100 and 14 days' incarceration in the county jail. On appeal, the Supreme Court of South Dakota reversed

---

[1] At respondent's trial, the officer who conducted the inventory testified as follows:

"Q. And why did you inventory this car?

"A. Mainly for safekeeping, because we have had a lot of trouble in the past of people getting into the impound lot and breaking into cars and stealing stuff out of them.

"Q. Do you know whether the vehicles that were broken into . . . were locked or unlocked?

"A. Both of them were locked, they would be locked." Record 74.

In describing the impound lot, the officer stated:

"A. It's the old county highway yard. It has a wooden fence partially around part of it, and kind of a dilapidated wire fence, a makeshift fence." *Id.,* at 73.

the conviction. 89 S. D. ——, 228 N. W. 2d 152. The court concluded that the evidence had been obtained in violation of the Fourth Amendment prohibition against unreasonable searches and seizures. We granted certiorari, 423 U. S. 923 (1975), and we reverse.

(2)

This Court has traditionally drawn a distinction between automobiles and homes or offices in relation to the Fourth Amendment. Although automobiles are "effects" and thus within the reach of the Fourth Amendment, *Cady* v. *Dombrowski*, 413 U. S. 433, 439 (1973), warrantless examinations of automobiles have been upheld in circumstances in which a search of a home or office would not. *Cardwell* v. *Lewis*, 417 U. S. 583, 589 (1974); *Cady* v. *Dombrowski, supra,* at 439–440; *Chambers* v. *Maroney*, 399 U. S. 42, 48 (1970).

The reason for this well-settled distinction is twofold. First, the inherent mobility of automobiles creates circumstances of such exigency that, as a practical necessity, rigorous enforcement of the warrant requirement is impossible. *Carroll* v. *United States,* 267 U. S. 132, 153–154 (1925); *Coolidge* v. *New Hampshire,* 403 U. S. 443, 459–460 (1971). But the Court has also upheld warrantless searches where no immediate danger was presented that the car would be removed from the jurisdiction. *Chambers* v. *Maroney, supra,* at 51–52; *Cooper* v. *California,* 386 U. S. 58 (1967). Besides the element of mobility, less rigorous warrant requirements govern because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office.[2] In discharging their varied re-

---

[2] In *Camara* v. *Municipal Court,* 387 U. S. 523 (1967), and *See* v. *City of Seattle,* 387 U. S. 541 (1967), the Court held that a warrant was required to effect an unconsented administrative entry

sponsibilities for ensuring the public safety, law enforcement officials are necessarily brought into frequent contact with automobiles. Most of this contact is distinctly noncriminal in nature. *Cady* v. *Dombrowski, supra,* at 442. Automobiles, unlike homes, are subjected to pervasive and continuing governmental regulation and controls, including periodic inspection and licensing requirements. As an everyday occurrence, police stop and examine vehicles when license plates or inspection stickers have expired, or if other violations, such as exhaust fumes or excessive noise, are noted, or if headlights or other safety equipment are not in proper working order.

The expectation of privacy as to automobiles is further diminished by the obviously public nature of automobile travel. Only two Terms ago, the Court noted:

> "One has a lesser expectation of privacy in a motor vehicle because its function is transportation and it seldom serves as one's residence or as the repository of personal effects. . . . It travels public thoroughfares where both its occupants and its contents are in plain view." *Cardwell* v. *Lewis, supra,* at 590.

In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady* v. *Dombrowski, supra,* at 441, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activi-

---

into and inspection of private dwellings or commercial premises to ascertain health or safety conditions. In contrast, this procedure has never been held applicable to automobile inspections for safety purposes.

ties. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic.[3] The authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience is beyond challenge.

When vehicles are impounded, local police departments generally follow a routine practice of securing and inventorying the automobiles' contents. These procedures developed in response to three distinct needs: the protection of the owner's property while it remains in police custody, *United States* v. *Mitchell,* 458 F. 2d 960, 961 (CA9 1972); the protection of the police against claims or disputes over lost or stolen property, *United States* v. *Kelehar,* 470 F. 2d 176, 178 (CA5 1972); and the protection of the police from potential danger, *Cooper* v. *California, supra,* at 61–62. The practice has been viewed as essential to respond to incidents of theft or vandalism. See *Cabbler* v. *Commonwealth,* 212 Va. 520, 522, 184 S. E. 2d 781, 782 (1971), cert. denied, 405 U. S. 1073 (1972); *Warrix* v. *State,* 50 Wis. 2d 368, 376, 184 N. W. 2d 189, 194 (1971). In addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned.

These caretaking procedures have almost uniformly been upheld by the state courts, which by virtue of the localized nature of traffic regulation have had considerable occasion to deal with the issue.[4] Applying the

---

[3] The New York Court of Appeals has noted that in New York City alone, 108,332 cars were towed away for traffic violations during 1969. *People* v. *Sullivan,* 29 N. Y. 2d 69, 71, 272 N. E. 2d 464, 465 (1971).

[4] In contrast to state officials engaged in everyday caretaking functions:

"The contact with vehicles by federal law enforcement officers

Fourth Amendment standard of "reasonableness," [5] the state courts have overwhelmingly concluded that, even if an inventory is characterized as a "search," [6] the

usually, if not always, involves the detection or investigation of crimes unrelated to the operation of a vehicle." *Cady* v. *Dombrowski,* 413 U. S. 433, 440 (1973).

[5] In analyzing the issue of reasonableness *vel non,* the courts have not sought to determine whether a protective inventory was justified by "probable cause." The standard of probable cause is peculiarly related to criminal investigations, not routine, noncriminal procedures. See generally Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L. Rev. 835, 850–851 (1974). The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations.

In view of the noncriminal context of inventory searches, and the inapplicability in such a setting of the requirement of probable cause, courts have held—and quite correctly—that search warrants are not required, linked as the warrant requirement textually is to the probable-cause concept. We have frequently observed that the warrant requirement assures that legal inferences and conclusions as to probable cause will be drawn by a neutral magistrate unrelated to the criminal investigative-enforcement process. With respect to noninvestigative police inventories of automobiles lawfully within governmental custody, however, the policies underlying the warrant requirement, to which MR. JUSTICE POWELL refers, are inapplicable.

[6] Given the benign noncriminal context of the intrusion, see *Wyman* v. *James,* 400 U. S. 309, 317 (1971), some courts have concluded that an inventory does not constitute a search for Fourth Amendment purposes. See, *e. g., People* v. *Sullivan, supra,* at 77, 272 N. E. 2d, at 469; *People* v. *Willis,* 46 Mich. App. 436, 208 N. W. 2d 204 (1973); *State* v. *Wallen,* 185 Neb. 44, 49–50, 173 N. W. 2d 372, 376, cert. denied, 399 U. S. 912 (1970). Other courts have expressed doubts as to whether the intrusion is classifiable as a search. *State* v. *All,* 17 N. C. App. 284, 286, 193 S. E. 2d 770, 772, cert. denied, 414 U. S. 866 (1973). Petitioner, however, has expressly abandoned the contention that the inventory in this case is exempt from the Fourth Amendment standard of reasonableness. Tr. of Oral Arg. 5.

intrusion is constitutionally permissible. See, *e. g., City of St. Paul* v. *Myles,* 298 Minn. 298, 300–301, 218 N. W. 2d 697, 699 (1974); *State* v. *Tully,* 166 Conn. 126, 136, 348 A. 2d 603, 609 (1974); *People* v. *Trusty,* 183 Colo. 291, 296–297, 516 P. 2d 423, 425–426 (1973); *People* v. *Sullivan,* 29 N. Y. 2d 69, 73, 272 N. E. 2d 464, 466 (1971); *Cabbler* v. *Commonwealth, supra; Warrix* v. *State, supra; State* v. *Wallen,* 185 Neb. 44, 173 N. W. 2d 372, cert. denied, 399 U. S. 912 (1970); *State* v. *Criscola,* 21 Utah 2d 272, 444 P. 2d 517 (1968); *State* v. *Montague,* 73 Wash. 2d 381, 438 P. 2d 571 (1968); *People* v. *Clark,* 32 Ill. App. 3d 898, 336 N. E. 2d 892 (1975); *State* v. *Achter,* 512 S. W. 2d 894 (Mo. Ct. App. 1974); *Bennett* v. *State,* 507 P. 2d 1252 (Okla. Crim. App. 1973); *People* v. *Willis,* 46 Mich. App. 436, 208 N. W. 2d 204 (1973); *State* v. *All,* 17 N. C. App. 284, 193 S. E. 2d 770, cert. denied, 414 U. S. 866 (1973); *Godbee* v. *State,* 224 So. 2d 441 (Fla. Dist. Ct. App. 1969). Even the seminal state decision relied on by the South Dakota Supreme Court in reaching the contrary result, *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 484 P. 2d 84 (1971), expressly approved police caretaking activities resulting in the securing of property within the officer's plain view.

The majority of the Federal Courts of Appeals have likewise sustained inventory procedures as reasonable police intrusions. As Judge Wisdom has observed:

> "[W]hen the police take custody of any sort of container [such as] an automobile . . . it is reasonable to search the container to itemize the property to be held by the police. [This reflects] the underlying principle that the fourth amendment proscribes only *unreasonable* searches." *United States* v. *Gravitt,* 484 F. 2d 375, 378 (CA5 1973), cert. denied, 414 U. S. 1135 (1974) (emphasis in original).

See also *Cabbler* v. *Superintendent,* 528 F. 2d 1142 (CA4 1975), cert. pending, No. 75–1463; *Barker* v. *Johnson,* 484 F. 2d 941 (CA6 1973); *United States* v. *Mitchell,* 458 F. 2d 960 (CA9 1972); *United States* v. *Lipscomb,* 435 F. 2d 795 (CA5 1970), cert. denied, 401 U. S. 980 (1971); *United States* v. *Pennington,* 441 F. 2d 249 (CA5), cert. denied, 404 U. S. 854 (1971); *United States* v. *Boyd,* 436 F. 2d 1203 (CA5 1971); *Cotton* v. *United States,* 371 F. 2d 385 (CA9 1967). Accord, *Lowe* v. *Hopper,* 400 F. Supp. 970, 976–977 (SD Ga. 1975); *United States* v. *Spitalieri,* 391 F. Supp. 167, 169–170 (ND Ohio 1975); *United States* v. *Smith,* 340 F. Supp. 1023 (Conn. 1972); *United States* v. *Fuller,* 277 F. Supp. 97 (DC 1967), conviction aff'd, 139 U. S. App. D. C. 375, 433 F. 2d 533 (1970). These cases have recognized that standard inventories often include an examination of the glove compartment, since it is a customary place for documents of ownership and registration, *United States* v. *Pennington, supra,* at 251, as well as a place for the temporary storage of valuables.

(3)

The decisions of this Court point unmistakably to the conclusion reached by both federal and state courts that inventories pursuant to standard police procedures are reasonable. In the first such case, Mr. Justice Black made plain the nature of the inquiry before us:

"But the question here is not whether the search was *authorized* by state law. The question is rather whether the search was *reasonable* under the Fourth Amendment." *Cooper* v. *California,* 386 U. S., at 61 (emphasis added).

And, in his last writing on the Fourth Amendment, Mr. Justice Black said:

"[T]he Fourth Amendment does not require that every search be made pursuant to a warrant. It

prohibits only '*unreasonable* searches and seizures.' The relevant test *is not the reasonableness of the opportunity to procure a warrant,* but the reasonableness of the seizure under all the circumstances. The test of reasonableness cannot be fixed by *per se* rules; each case must be decided on its own facts." *Coolidge* v. *New Hampshire,* 403 U. S., at 509–510 (concurring and dissenting) (emphasis added).

In applying the reasonableness standard adopted by the Framers, this Court has consistently sustained police intrusions into automobiles impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents. In *Cooper* v. *California, supra,* the Court upheld the inventory of a car impounded under the authority of a state forfeiture statute. Even though the inventory was conducted in a distinctly criminal setting [7] and carried out a week after the car had been impounded, the Court nonetheless found that the car search, including examination of the glove compartment where contraband was found, was reasonable under the circumstances. This conclusion was reached despite the fact that no warrant had issued and probable cause to search for the contraband in the vehicle had not been established. The Court said in language explicitly applicable here:

"It would be unreasonable to hold that the police, having to retain the car in their custody for such a length of time, had no right, even for their own protection, to search it." 386 U. S., at 61–62.[8]

[7] In *Cooper,* the owner had been arrested on narcotics· charges, and the car was taken into custody pursuant to the state forfeiture statute. The search was conducted several months before the forfeiture proceedings were actually instituted.

[8] There was, of course, no certainty at the time of the search that forfeiture proceedings would ever be held. Accordingly, there

In the following Term, the Court in *Harris* v. *United States*, 390 U. S. 234 (1968), upheld the introduction of evidence, seized by an officer who, after conducting an inventory search of a car and while taking means to safeguard it, observed a car registration card lying on the metal stripping of the car door. Rejecting the argument that a warrant was necessary, the Court held that the intrusion was justifiable since it was "taken to protect the car while it was in police custody." *Id.,* at 236.[9]

Finally, in *Cady* v. *Dombrowski, supra,* the Court upheld a warrantless search of an automobile towed to a private garage even though no probable cause existed to believe that the vehicle contained fruits of a crime. The sole justification for the warrantless incursion was that it was incident to the caretaking function of the local police to protect the community's safety. Indeed, the protective search was instituted solely because local police "were under the impression" that the incapacitated driver, a Chicago police officer, was required to carry his service revolver at all times; the police had reasonable grounds to believe a weapon might be in the car, and thus available to vandals. 413 U. S., at 436. The Court carefully noted that the protective search was

---

was no reason for the police to assume automatically that the automobile would eventually be forfeited to the State. Indeed, as the California Court of Appeal stated, "[T]he instant record nowhere discloses that forfeiture proceedings were instituted in respect to defendant's car . . . ." *People* v. *Cooper,* 234 Cal. App. 2d 587, 596, 44 Cal. Rptr. 483, 489 (1965). No reason would therefore appear to limit *Cooper* to an impoundment pursuant to a forfeiture statute.

[9] The Court expressly noted that the legality of the inventory was not presented, since the evidence was discovered at the point when the officer was taking protective measures to secure the automobile from the elements. But the Court clearly held that the officer acted properly in opening the car for protective reasons.

carried out in accordance with *standard procedures* in the local police department, *ibid.*, a factor tending to ensure that the intrusion would be limited in scope to the extent necessary to carry out the caretaking function. See *United States* v. *Spitalieri,* 391 F. Supp., at 169. In reaching this result, the Court in *Cady* distinguished *Preston* v. *United States,* 376 U. S. 364 (1964), on the grounds that the holding, invalidating a car search conducted after a vagrancy arrest, "stands only for the proposition that the search challenged there could not be justified as one incident to an arrest." 413 U. S., at 444. *Preston* therefore did not raise the issue of the constitutionality of a protective inventory of a car lawfully within police custody.

The holdings in *Cooper, Harris,* and *Cady* point the way to the correct resolution of this case. None of the three cases, of course, involves the precise situation presented here; but, as in all Fourth Amendment cases, we are obliged to look to all the facts and circumstances of this case in light of the principles set forth in these prior decisions.

> "[W]hether a search and seizure is unreasonable within the meaning of the Fourth Amendment depends upon the facts and circumstances of each case . . . ." *Cooper* v. *California,* 386 U. S., at 59.

The Vermillion police were indisputably engaged in a caretaking search of a lawfully impounded automobile. Cf. *United States* v. *Lawson,* 487 F. 2d 468, 471 (CA8 1973). The inventory was conducted only after the car had been impounded for multiple parking violations. The owner, having left his car illegally parked for an extended period, and thus subject to impoundment, was not present to make other arrangements for the safekeeping of his belongings. The inventory itself was prompted by the presence in plain view of a number of

valuables inside the car. As in *Cady,* there is no suggestion whatever that this standard procedure, essentially like that followed throughout the country, was a pretext concealing an investigatory police motive.[10]

On this record we conclude that in following standard police procedures, prevailing throughout the country and approved by the overwhelming majority of courts, the conduct of the police was not "unreasonable" under the Fourth Amendment.

The judgment of the South Dakota Supreme Court is therefore reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*

MR. JUSTICE POWELL, concurring.

While I join the opinion of the Court, I add this opinion to express additional views as to why the search conducted in this case is valid under the Fourth and Fourteenth Amendments. This inquiry involves two distinct questions: (i) whether routine inventory searches are impermissible, and (ii) if not, whether they must be conducted pursuant to a warrant.

---

[10] The inventory was not unreasonable in scope. Respondent's motion to suppress in state court challenged the inventory only as to items inside the car not in plain view. But once the policeman was lawfully inside the car to secure the personal property in plain view, it was not unreasonable to open the unlocked glove compartment, to which vandals would have had ready and unobstructed access once inside the car.

The "consent" theory advanced by the dissent rests on the assumption that the inventory is exclusively for the protection of the car owner. It is not. The protection of the municipality and public officers from claims of lost or stolen property and the protection of the public from vandals who might find a firearm, *Cady* v. *Dombrowski,* or as here, contraband drugs, are also crucial.

# I

The central purpose of the Fourth Amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. See, *e. g., United States* v. *Brignoni-Ponce,* 422 U. S. 873, 878 (1975); *Camara* v. *Municipal Court,* 387 U. S. 523, 528 (1967). None of our prior decisions is dispositive of the issue whether the Amendment permits routine inventory "searches" [1] of automobiles.[2] Resolution of this

---

[1] Routine inventories of automobiles intrude upon an area in which the private citizen has a "reasonable expectation of privacy." *Katz* v. *United States,* 389 U. S. 347, 360 (1967) (Harlan, J., concurring). Thus, despite their benign purpose, when conducted by government officials they constitute "searches" for purposes of the Fourth Amendment. See *Terry* v. *Ohio,* 392 U. S. 1, 18 n. 15 (1968); *United States* v. *Lawson,* 487 F. 2d 468 (CA8 1973); *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 709–710, 484 P. 2d 84, 90–91 (1971) (en banc). Cf. *Cardwell* v. *Lewis,* 417 U. S. 583, 591 (1974) (plurality opinion).

[2] The principal decisions relied on by the State to justify the inventory search in this case, *Harris* v. *United States,* 390 U. S. 234 (1968); *Cooper* v. *California,* 386 U. S. 58 (1967); and *Cady* v. *Dombrowski,* 413 U. S. 433 (1973), each relied in part on significant factors not found here. *Harris* only involved an application of the "plain view" doctrine. In *Cooper* the Court validated an automobile search that took place one week after the vehicle was impounded on the theory that the police had a possessory interest in the car based on a state forfeiture statute requiring them to retain it some four months until the forfeiture sale. See 386 U. S., at 61–62. Finally, in *Cady* the Court held that the search of an automobile trunk "which the officer reasonably believed to contain a gun" was not unreasonable within the meaning of the Fourth and Fourteenth Amendments. 413 U. S., at 448. See also *id.,* at 436–437. The police in a typical inventory search case, however, will have no reasonable belief as to the particular automobile's contents. And, although the police in this case knew with certainty that there were items of personal property within the exposed interior of the car— *i. e.,* the watch on the dashboard—see *ante,* at 366, this information

question requires a weighing of the governmental and societal interests advanced to justify such intrusions against the constitutionally protected interest of the individual citizen in the privacy of his effects. *United States* v. *Martinez-Fuerte, post,* at 555; *United States* v. *Brignoni-Ponce, supra,* at 878–879; *United States* v. *Ortiz,* 422 U. S. 891, 892 (1975); *Cady* v. *Dombrowski,* 413 U. S. 433, 447–448 (1973); *Terry* v. *Ohio,* 392 U. S. 1, 20–21 (1968). Cf. *Camara* v. *Municipal Court, supra,* at 534–535. As noted in the Court's opinion, see *ante,* at 369, three interests generally have been advanced in support of inventory searches: (i) protection of the police from danger; (ii) protection of the police against claims and disputes over lost or stolen property; and (iii) protection of the owner's property while it remains in police custody.

Except in rare cases, there is little danger associated with impounding unsearched automobiles. But the occasional danger that may exist cannot be discounted entirely. See *Cooper* v. *California,* 386 U. S. 58, 61–62 (1967). The harmful consequences in those rare cases may be great, and there does not appear to be any effective way of identifying in advance those circumstances or classes of automobile impoundments which represent a greater risk. Society also has an important interest in minimizing the number of false claims filed against police since they may diminish the community's respect for law enforcement generally and lower department morale, thereby impairing the effectiveness of the police.[3] It

---

alone did not, in the circumstances of this case, provide additional justification for the search of the closed console glove compartment in which the contraband was discovered.

[3] The interest in protecting the police from liability for lost or stolen property is not relevant in this case. Respondent's motion to suppress was limited to items inside the automobile not in plain

is not clear, however, that inventories are a completely effective means of discouraging false claims, since there remains the possibility of accompanying such claims with an assertion that an item was stolen prior to the inventory or was intentionally omitted from the police records.

The protection of the owner's property is a significant interest for both the policeman and the citizen. It is argued that an inventory is not necessary since locked doors and rolled-up windows afford the same protection that the contents of a parked automobile normally enjoy.[4] But many owners might leave valuables in their automobile temporarily that they would not leave there unattended for the several days that police custody may last. There is thus a substantial gain in security if automobiles are inventoried and valuable items removed for storage. And, while the same security could be attained by posting a guard at the storage lot, that alternative may be prohibitively expensive, especially for smaller jurisdictions.[5]

Against these interests must be weighed the citizen's interest in the privacy of the contents of his automobile. Although the expectation of privacy in an automobile is significantly less than the traditional expectation of privacy associated with the home, *United States* v. *Martinez-Fuerte, post,* at 561–562; *United States* v. *Ortiz, supra,* at 896 n. 2; see *Cardwell* v. *Lewis,* 417 U. S. 583, 590–591 (1974) (plurality opinion), the unrestrained search

---

view. And, the Supreme Court of South Dakota here held that the removal of objects in plain view, and the closing of windows and locking of doors, satisfied any duty the police department owed the automobile's owner to protect property in police possession. 89 S. D. ——, ——, 228 N. W. 2d 152, 159 (1975).

[4] See *Mozzetti* v. *Superior Court, supra,* at 709–710, 484 P. 2d, at 90–91.

[5] See Note, Warrantless Searches and Seizures of Automobiles, 87 Harv. L. Rev. 835, 853 (1974).

of an automobile and its contents would constitute a serious intrusion upon the privacy of the individual in many circumstances. But such a search is not at issue in this case. As the Court's opinion emphasizes, the search here was limited to an inventory of the unoccupied automobile and was conducted strictly in accord with the regulations of the Vermillion Police Department.[6] Upholding searches of this type provides no general license for the police to examine all the contents of such automobiles.[7]

I agree with the Court that the Constitution permits routine inventory searches, and turn next to the question whether they must be conducted pursuant to a warrant.

---

[6] A complete "inventory report" is required of all vehicles impounded by the Vermillion Police Department. The standard inventory consists of a survey of the vehicle's exterior—windows, fenders, trunk, and hood—apparently for damage, and its interior, to locate "valuables" for storage. As part of each inventory a standard report form is completed. The report in this case listed the items discovered in both the automobile's interior and the unlocked glove compartment. The only notation regarding the trunk was that it was locked. A police officer testified that all impounded vehicles are searched, that the search always includes the glove compartment, and that the trunk had not been searched in this case because it was locked. See Record 33–34, 73–79.

[7] As part of their inventory search the police may discover materials such as letters or checkbooks that "touch upon intimate areas of an individual's personal affairs," and "reveal much about a person's activities, associations, and beliefs." *California Bankers Assn.* v. *Shultz,* 416 U. S. 21, 78–79 (1974) (POWELL, J., concurring). See also *Fisher* v. *United States,* 425 U. S. 391, 401 n. 7 (1976). In this case the police found, *inter alia,* "miscellaneous papers," a checkbook, an installment loan book, and a social security status card. Record 77. There is, however, no evidence in the record that in carrying out their established inventory duties the Vermillion police do other than search for and remove for storage such property without examining its contents.

## II

While the Fourth Amendment speaks broadly in terms of "unreasonable searches and seizures,"[8] the decisions of this Court have recognized that the definition of "reasonableness" turns, at least in part, on the more specific dictates of the Warrant Clause. See *United States* v. *United States District Court,* 407 U. S. 297, 315 (1972); *Katz* v. *United States,* 389 U. S. 347, 356 (1967); *Camara* v. *Municipal Court,* 387 U. S., at 528. As the Court explained in *Katz* v. *United States, supra,* at 357, "[s]earches conducted without warrants have been held unlawful 'notwithstanding facts unquestionably showing probable cause,' *Agnello* v. *United States,* 269 U. S. 20, 33, for the Constitution requires 'that the deliberate, impartial judgment of a judicial officer . . . be interposed between the citizen and the police . . . .' *Wong Sun* v. *United States,* 371 U. S. 471, 481–482." Thus, although "[s]ome have argued that '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search was reasonable,' *United States* v. *Rabinowitz,* 339 U. S. 56, 66 (1950)," "[t]his view has not been accepted." *United States* v. *United States District Court, supra,* at 315, and n. 16. See *Chimel* v. *California,* 395 U. S. 752 (1969). Except in a few carefully defined classes of cases, a search of private property without valid consent is "unreasonable" unless it has been authorized by a valid search warrant. See, *e. g., Almeida-Sanchez* v. *United States,* 413 U. S. 266, 269 (1973); *Stoner* v. *California,* 376 U. S. 483, 486 (1964);

---

[8] The Amendment provides that

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

*Camara* v. *Municipal Court, supra,* at 528; *United States* v. *Jeffers,* 342 U. S. 48, 51 (1951); *Agnello* v. *United States,* 269 U. S. 20, 30 (1925).

Although the Court has validated warrantless searches of automobiles in circumstances that would not justify a search of a home or office, *Cady* v. *Dombrowski,* 413 U. S. 433 (1973); *Chambers* v. *Maroney,* 399 U. S. 42 (1970); *Carroll* v. *United States,* 267 U. S. 132 (1925), these decisions establish no general "automobile exception" to the warrant requirement. See *Preston* v. *United States,* 376 U. S. 364 (1964). Rather, they demonstrate that " 'for the purposes of the Fourth Amendment there is a constitutional difference between houses and cars,' " *Cady* v. *Dombrowski, supra,* at 439, quoting *Chambers* v. *Maroney, supra,* at 52, a difference that may in some cases justify a warrantless search.[9]

The routine inventory search under consideration in this case does not fall within any of the established exceptions to the warrant requirement.[10] But examination of the interests which are protected when searches are

---

[9] This difference turns primarily on the mobility of the automobile and the impracticability of obtaining a warrant in many circumstances, *e. g., Carroll* v. *United States,* 267 U. S. 132, 153–154 (1925). The lesser expectation of privacy in an automobile also is important. See *United States* v. *Ortiz,* 422 U. S. 891, 896 n. 2 (1975); *Cardwell* v. *Lewis,* 417 U. S., at 590; *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 279 (1973) (POWELL, J., concurring). See *Cady* v. *Dombrowski,* 413 U. S., at 441–442.

[10] See, *e. g., Chimel* v. *California,* 395 U. S. 752 (1969); *Terry* v. *Ohio,* 392 U. S. 1 (1968); *Warden* v. *Hayden,* 387 U. S. 294, 298–300 (1967); *Cooper* v. *California,* 386 U. S. 58 (1967); *Brinegar* v. *United States,* 338 U. S. 160, 174–177 (1949); *Carroll* v. *United States, supra,* at 153, 156. See also *McDonald* v. *United States,* 335 U. S. 451, 454–456 (1948); *United States* v. *Mapp,* 476 F. 2d 67, 76 (CA2 1973) (listing then-recognized exceptions to warrant requirement: (i) hot pursuit; (ii) plain-view doctrine; (iii) emergency situation; (iv) automobile search; (v) consent; and (vi) incident to arrest).

conditioned on warrants issued by a judicial officer reveals that none of these is implicated here. A warrant may issue only upon "probable cause." In the criminal context the requirement of a warrant protects the individual's legitimate expectation of privacy against the overzealous police officer. "Its protection consists in requiring that those inferences [concerning probable cause] be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Johnson* v. *United States,* 333 U. S. 10, 14 (1948). See, *e. g., United States* v. *United States District Court, supra,* at 316–318. Inventory searches, however, are not conducted in order to discover evidence of crime. The officer does not make a discretionary determination to search based on a judgment that certain conditions are present. Inventory searches are conducted in accordance with established police department rules or policy and occur whenever an automobile is seized. There are thus no special facts for a neutral magistrate to evaluate.

A related purpose of the warrant requirement is to prevent hindsight from affecting the evaluation of the reasonableness of a search. See *United States* v. *Martinez-Fuerte, post,* at 565; cf. *United States* v. *Watson,* 423 U. S. 411, 455 n. 22 (1976) (MARSHALL, J., dissenting). In the case of an inventory search conducted in accordance with standard police department procedures, there is no significant danger of hindsight justification. The absence of a warrant will not impair the effectiveness of post-search review of the reasonableness of a particular inventory search.

Warrants also have been required outside the context of a criminal investigation. In *Camara* v. *Municipal Court,* the Court held that, absent consent, a warrant was necessary to conduct an areawide building code in-

spection, even though the search could be made absent cause to believe that there were violations in the particular buildings being searched. In requiring a warrant the Court emphasized that "[t]he practical effect of [the existing warrantless search procedures had been] to leave the occupant subject to the discretion of the official in the field," since

> "when [an] inspector demands entry, the occupant ha[d] no way of knowing whether enforcement of the municipal code involved require[d] inspection of his premises, no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself [was] acting under proper authorization." 387 U. S., at 532.

In the inventory search context these concerns are absent. The owner or prior occupant of the automobile is not present, nor, in many cases, is there any real likelihood that he could be located within a reasonable period of time. More importantly, no significant discretion is placed in the hands of the individual officer: he usually has no choice as to the subject of the search or its scope.[11]

In sum, I agree with the Court that the routine inventory search in this case is constitutional.

Mr. Justice Marshall, with whom Mr. Justice Brennan and Mr. Justice Stewart join, dissenting.

The Court today holds that the Fourth Amendment permits a routine police inventory search of the closed

---

[11] In this case, for example, the officer who conducted the search testified that the offending automobile was towed to the city impound lot after a second ticket had been issued for a parking violation. The officer further testified that all vehicles taken to the lot are searched in accordance with a "standard inventory sheet" and "all items [discovered in the vehicles] are removed for safekeeping." Record 74. See n. 6, supra.

glove compartment of a locked automobile impounded for ordinary traffic violations. Under the Court's holding, such a search may be made without attempting to secure the consent of the owner and without any particular reason to believe the impounded automobile contains contraband, evidence, or valuables, or presents any danger to its custodians or the public.[1] Because I believe this holding to be contrary to sound elaboration of established Fourth Amendment principles, I dissent.

As MR. JUSTICE POWELL recognizes, the requirement of a warrant aside, resolution of the question whether an inventory search of closed compartments inside a locked automobile can ever be justified as a constitutionally "reasonable" search [2] depends upon a reconciliation of the owner's constitutionally protected privacy interests against governmental intrusion, and legitimate governmental interests furthered by securing the car and its contents. *Terry* v. *Ohio,* 392 U. S. 1, 20–21 (1968); *Camara* v. *Municipal Court,* 387 U. S. 523, 534–535, 536–537 (1967). The Court fails clearly to articulate the reasons for its reconciliation of these interests in this case, but it is at least clear to me that the considerations

---

[1] The Court does not consider, however, whether the police might open and search the glove compartment if it is locked, or whether the police might search a locked trunk or other compartment.

[2] I agree with MR. JUSTICE POWELL's conclusion, *ante,* at 377 n. 1, that, as petitioner conceded, Tr. of Oral Arg. 5, the examination of the closed glove compartment in this case is a "search." See *Camara* v. *Municipal Court,* 387 U. S. 523, 530 (1967): "It is surely anomalous to say that the individual and his private property are fully protected by the Fourth Amendment only when the individual is suspected of criminal behavior." See also *Cooper* v. *California,* 386 U. S. 58, 61 (1967), quoted in n. 5, *infra.* Indeed, the Court recognized in *Harris* v. *United States,* 390 U. S. 234, 236 (1968), that the procedure invoked here would constitute a search for Fourth Amendment purposes.

alluded to by the Court, and further discussed by MR. JUSTICE POWELL, are insufficient to justify the Court's result in this case.

To begin with, the Court appears to suggest by reference to a "diminished" expectation of privacy, *ante,* at 368, that a person's constitutional interest in protecting the integrity of closed compartments of his locked automobile may routinely be sacrificed to governmental interests requiring interference with that privacy that are less compelling than would be necessary to justify a search of similar scope of the person's home or office. This has never been the law. The Court correctly observes that some prior cases have drawn distinctions between automobiles and homes or offices in Fourth Amendment cases; but even as the Court's discussion makes clear, the reasons for distinction in those cases are not present here. Thus, *Chambers* v. *Maroney,* 399 U. S. 42 (1970), and *Carroll* v. *United States,* 267 U. S. 132 (1925), permitted certain probable-cause searches to be carried out without warrants in view of the exigencies created by the mobility of automobiles, but both decisions reaffirmed that the standard of probable cause necessary to authorize such a search was no less than the standard applicable to search of a home or office. *Chambers, supra,* at 51; *Carroll, supra,* at 155–156.[3] In other contexts the Court has recognized that automobile travel sacrifices some privacy interests to the publicity of plain view, *e. g., Cardwell* v. *Lewis,* 417 U. S. 583, 590 (1974) (plurality opinion); cf. *Harris* v. *United States,* 390 U. S. 234 (1968). But this recognition, too, is inapposite here, for there is no question of plain view in

---

[3] This is, of course, "probable cause in the sense of specific knowledge about a particular automobile." *Almeida-Sanchez* v. *United States,* 413 U. S. 266, 281 (1973) (POWELL, J., concurring).

this case.[4]  Nor does this case concern intrusions of the scope that the Court apparently assumes would ordinarily be permissible in order to insure the running safety of a car.  While it may be that privacy expectations associated with automobile travel are in some regards less than those associated with a home or office, see *United States* v. *Martinez-Fuerte, post,* at 561–562, it is equally clear that "[t]he word 'automobile' is not a talisman in whose presence the Fourth Amendment fades away . . . ,"  *Coolidge* v. *New Hampshire,* 403 U. S. 443,

---

[4] In its opinion below, the Supreme Court of South Dakota stated that in its view the police were constitutionally justified in entering the car to remove, list, and secure objects in plain view from the outside of the car.  89 S. D. ——, ——, 228 N. W. 2d 152, 158–159 (1975).  This issue is not presented on certiorari here.

Contrary to the Court's assertion, however, *ante,* at 375–376, the search of respondent's car was not in any way "prompted by the presence in plain view of a number of valuables inside the car." In fact, the record plainly states that every vehicle taken to the city impound lot was inventoried, Record 33, 74, 75, and that as a matter of "standard procedure," "every inventory search" would involve entry into the car's closed glove compartment.  *Id.,* at 43, 44. See also Tr. of Oral Arg. 7.  In any case, as MR. JUSTICE POWELL recognizes, *ante,* at 377–378, n. 2, entry to remove plain-view articles from the car could not justify a further search into the car's closed areas.  Cf. *Chimel* v. *California,* 395 U. S. 752, 763, 764–768 (1969). Despite the Court's confusion on this point—further reflected by its discussion of *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 484 P. 2d 84 (1971), *ante,* at 371, and its reliance on state and lower federal-court cases approving nothing more than inventorying of plain-view items, *e. g., Barker* v. *Johnson,* 484 F. 2d 941 (CA6 1973); *United States* v. *Mitchell,* 458 F. 2d 960 (CA9 1972); *United States* v. *Fuller,* 277 F. Supp. 97 (DC 1967), conviction aff'd, 139 U. S. App. D. C. 375, 433 F. 2d 533 (1970); *State* v. *Tully,* 166 Conn. 126, 348 A. 2d 603 (1974); *State* v. *Achter,* 512 S. W. 2d 894 (Mo. Ct. App. 1974); *State* v. *All,* 17 N. C. App. 284, 193 S. E. 2d 770, cert. denied, 414 U. S. 866 (1973)—I must conclude that the Court's holding also permits the intrusion into a car and its console even in the absence of articles in plain view.

461 (1971).[5] Thus, we have recognized that "[a] *search*, even of an automobile, is a substantial invasion of privacy," *United States* v. *Ortiz*, 422 U. S. 891, 896 (1975) (emphasis added), and accordingly our cases have consistently recognized that the nature and substantiality of interest required to justify a *search* of private areas of an automobile is no less than that necessary to justify an intrusion of similar scope into a home or office. See, *e. g., United States* v. *Ortiz, supra; Almeida-Sanchez* v. *United States,* 413 U. S. 266, 269–270 (1973); *Coolidge, supra; Dyke* v. *Taylor Implement Mfg. Co.,* 391 U. S. 216, 221–222 (1968); *Preston* v. *United States,* 376 U. S. 364 (1964).[6]

---

[5] Moreover, as the Court observed in *Cooper* v. *California, supra,* at 61: " '[L]awful custody of an automobile does not of itself dispense with constitutional requirements of searches thereafter made of it.' "

[6] It would be wholly unrealistic to say that there is no reasonable and actual expectation in maintaining the privacy of closed compartments of a locked automobile, when it is customary for people in this day to carry their most personal and private papers and effects in their automobiles from time to time. Cf. *Katz* v. *United States,* 389 U. S. 347, 352 (1967) (opinion of the Court); *id.,* at 361 (Harlan, J., concurring). Indeed, this fact is implicit in the very basis of the Court's holding—that such compartments may contain valuables in need of safeguarding.

MR. JUSTICE POWELL observes, *ante,* at 380, and n. 7, that the police would not be justified in sifting through papers secured under the procedure employed here. I agree with this, and I note that the Court's opinion does not authorize the inspection of suitcases, boxes, or other containers which might themselves be sealed, removed, and secured without further intrusion. See, *e. g., United States* v. *Lawson,* 487 F. 2d 468 (CA8 1973); *State* v. *McDougal,* 68 Wis. 2d 399, 228 N. W. 2d 671 (1975); *Mozzetti* v. *Superior Court, supra.* But this limitation does not remedy the Fourth Amendment intrusion when the simple inventorying of closed areas discloses tokens, literature, medicines, or other things which on their face may "reveal much about a person's activities, associations, and beliefs,"

The Court's opinion appears to suggest that its result may in any event be justified because the inventory search procedure is a "reasonable" response to

> "three distinct needs: the protection of the owner's property while it remains in police custody . . . ; the protection of the police against claims or disputes over lost or stolen property . . . ; and the protection of the police from potential danger." *Ante,* at 369.[7]

This suggestion is flagrantly misleading, however, because the record of this case explicitly belies any relevance of the last two concerns. In any event it is my view that none of these "needs," separately or together, can suffice to justify the inventory search procedure approved by the Court.

First, this search cannot be justified in any way as a safety measure, for—though the Court ignores it—the sole purpose given by the State for the Vermillion police's inventory procedure was to secure *valuables,* Record 75, 98. Nor is there any indication that the officer's search in this case was tailored in any way to safety concerns, or that ordinarily it is so circumscribed. Even aside from the actual basis for the police practice in this case, however, I do not believe that any blanket safety argument could justify a program of routine

---

*California Bankers Assn.* v. *Shultz,* 416 U. S. 21, 78–79 (1974) (POWELL, J., concurring).

[7] The Court also observes that "[i]n addition, police frequently attempt to determine whether a vehicle has been stolen and thereafter abandoned." *Ante,* at 369. The Court places no reliance on this concern in this case, however, nor could it. There is no suggestion that the police suspected that respondent's car was stolen, or that their search was directed at, or stopped with, a determination of the car's ownership. Indeed, although the police readily identified the car as respondent's, Record 98–99, the record does not show that they ever sought to contact him.

searches of the scope permitted here. As MR. JUSTICE POWELL recognizes, ordinarily "there is little danger associated with impounding unsearched automobiles," *ante,* at 378.[8] Thus, while the safety rationale may not be entirely discounted when it is actually relied upon, it surely cannot justify the search of every car upon the basis of undifferentiated possibility of harm; on the contrary, such an intrusion could ordinarily be justified only in those individual cases where the officer's inspection was prompted by specific circumstances indicating the pos-

---

[8] The very premise of the State's chief argument, that the cars must be searched in order to protect valuables because no guard is posted around the vehicles, itself belies the argument that they must be searched at the city lot in order to protect the police there. These circumstances alone suffice to distinguish the dicta from *Cooper* v. *California,* 386 U. S., at 61–62, recited by the Court, *ante,* at 373.

The Court suggests a further "crucial" justification for the search in this case: "protection of the *public* from vandals who might find a firearm, *Cady* v. *Dombrowski,* [413 U. S. 433 (1973)], or as here, contraband drugs" (emphasis added). *Ante,* at 376 n. 10. This rationale, too, is absolutely without support in this record. There is simply no indication the police were looking for dangerous items. Indeed, even though the police found shotgun shells in the interior of the car, they never opened the trunk to determine whether it might contain a shotgun. Cf. *Cady, supra.* Aside from this, the suggestion is simply untenable as a matter of law. If this asserted rationale justifies search of all impounded automobiles, it must logically also justify the search of *all* automobiles, whether impounded or not, located in a similar area, for the argument is not based upon the custodial role of the police. See also *Cooper* v. *California, supra,* at 61, quoted in n. 5, *supra.* But this Court has never permitted the search of any car or home on the mere undifferentiated assumption that it might be vandalized and the vandals might find dangerous weapons or substances. Certainly *Cady* v. *Dombrowski,* permitting a limited search of a wrecked automobile where, *inter alia,* the police had a reasonable belief that the car contained a specific firearm, 413 U. S., at 448, does not so hold.

sibility of a particular danger. See *Terry* v. *Ohio,* 392 U. S., at 21, 27; cf. *Cady* v. *Dombrowski,* 413 U. S. 433, 448 (1973).

Second, the Court suggests that the search for valuables in the closed glove compartment might be justified as a measure to protect the police against lost property claims. Again, this suggestion is belied by the record, since—although the Court declines to discuss it—the South Dakota Supreme Court's interpretation of state law explicitly absolves the police, as "gratuitous depositors," from any obligation beyond inventorying objects in plain view and locking the car. 89 S. D. ——, ——, 228 N. W. 2d 152, 159 (1975).[9] Moreover, as MR. JUSTICE POWELL notes, *ante,* at 378–379, it may well be doubted that an inventory procedure would in any event work significantly to minimize the frustrations of false claims.[10]

Finally, the Court suggests that the public interest in protecting valuables that may be found inside a closed compartment of an impounded car may justify the inventory procedure. I recognize the genuineness of this governmental interest in protecting property from pilferage. But even if I assume that the posting of a guard would be fiscally impossible as an alternative means to

---

[9] Even were the State to impose a higher standard of custodial responsibility upon the police, however, it is equally clear that such a requirement must be read in light of the Fourth Amendment's pre-eminence to require protective measures other than interior examination of closed areas.

[10] Indeed, if such claims can be deterred at all, they might more effectively be deterred by sealing the doors and trunk of the car so that an unbroken seal would certify that the car had not been opened during custody. See *Cabbler* v. *Superintendent,* 374 F. Supp. 690, 700 (ED Va. 1974), rev'd, 528 F. 2d 1142 (CA4 1975), cert. pending, No. 75–1463.

the same protective end,[11] I cannot agree with the Court's conclusion. The Court's result authorizes—indeed it appears to require—the routine search of nearly every[12] car impounded.[13] In my view, the Constitution does not permit such searches as a matter of routine; absent specific consent, such a search is permissible only in exceptional circumstances of particular necessity.

It is at least clear that any owner might prohibit the police from executing a protective search of his impounded car, since by hypothesis the inventory is conducted for the owner's benefit. Moreover, it is obvious that not everyone whose car is impounded would want it to be searched. Respondent himself proves this; but

---

[11] I do not believe, however, that the Court is entitled to make this assumption, there being no such indication in the record. Cf. *Cady* v. *Dombrowski, supra,* at 447.

[12] The Court makes clear, *ante,* at 375, that the police may not proceed to search an impounded car if the owner is able to make other arrangements for the safekeeping of his belongings. Additionally, while the Court does not require consent before a search, it does not hold that the police may proceed with such a search in the face of the owner's denial of permission. In my view, if the owner of the vehicle is in police custody or otherwise in communication with the police, his consent to the inventory is prerequisite to an inventory search. See *Cabbler* v. *Superintendent, supra,* at 700; cf. *State* v. *McDougal,* 68 Wis. 2d, at 413, 228 N. W. 2d, at 678; *Mozzetti* v. *Superior Court,* 4 Cal. 3d, at 708, 484 P. 2d, at 89.

[13] In so requiring, the Court appears to recognize that a search of some, but not all, cars which there is no specific cause to believe contain valuables would itself belie any asserted property-securing purpose.

The Court makes much of the fact that the search here was a routine procedure, and attempts to analogize *Cady* v. *Dombrowski.* But it is quite clear that the routine in *Cady* was only to search where there was a reasonable belief that the car contained a dangerous weapon, 413 U. S., at 443; see *Dombrowski* v. *Cady,* 319 F. Supp. 530, 532 (ED Wis. 1970), not, as here, to search every car in custody without particular cause.

one need not carry contraband to prefer that the police not examine one's private possessions. Indeed, that preference is the premise of the Fourth Amendment. Nevertheless, according to the Court's result the law may presume that each owner in respondent's position consents to the search. I cannot agree. In my view, the Court's approach is squarely contrary to the law of consent;[14] it ignores the duty, in the absence of consent, to analyze in each individual case whether there is a need to search a particular car for the protection of its owner which is sufficient to outweigh the particular invasion. It is clear to me under established principles that in order to override the absence of explicit consent, such a search must at least be conditioned upon the fulfillment of two requirements.[15] First, there must be specific cause to believe that a search of the scope to be undertaken is necessary in order to preserve the integrity of particular valuable property threatened by the impoundment:

> "[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which . . . reasonably warrant that intrusion." *Terry* v. *Ohio,* 392 U. S., at 21.

Such a requirement of "specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence," *id.,* at 21 n. 18, for "[t]he basic purpose of this

---

[14] Even if it may be true that many persons would ordinarily consent to a protective inventory of their car upon its impoundment, this fact is not dispositive since even a majority lacks authority to consent to the search of *all* cars in order to assure the search of theirs. Cf. *United States* v. *Matlock,* 415 U. S. 164, 171 (1974); *Stoner* v. *California,* 376 U. S. 483 (1964).

[15] I need not consider here whether a warrant would be required in such a case.

Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Camara* v. *Municipal Court,* 387 U. S., at 528. Cf. *United States* v. *Brignoni-Ponce,* 422 U. S. 873, 883–884 (1975); *Cady* v. *Dombrowski,* 413 U. S., at 448; *Terry* v. *Ohio, supra,* at 27. Second, even where a search might be appropriate, such an intrusion may only follow the exhaustion and failure of reasonable efforts under the circumstances to identify and reach the owner of the property in order to facilitate alternative means of security or to obtain his consent to the search, for in this context the right to refuse the search remains with the owner. Cf. *Bumper* v. *North Carolina,* 391 U. S. 543 (1968).[16]

Because the record in this case shows that the procedures followed by the Vermillion police in searching respondent's car fall far short of these standards, in my view the search was impermissible and its fruits must be suppressed. First, so far as the record shows, the police in this case had no reason to believe that the glove compartment of the impounded car contained particular property of any substantial value. Moreover, the owner had apparently thought it adequate to protect whatever he left in the car overnight on the street in a business area simply to lock the car, and there is nothing in the record to show that the im-

---

[16] Additionally, although not relevant on this record, since the inventory procedure is premised upon benefit to the owner, it cannot be executed in any case in which there is reason to believe the owner would prefer to forgo it. This principle, which is fully consistent with the Court's result today, requires, for example, that when the police harbor suspicions (amounting to less than probable cause) that evidence or contraband may be found inside the automobile, they may not inventory it, for they must presume that the owner would refuse to permit the search.

poundment lot would prove a less secure location against pilferage,[17] cf. *Mozzetti* v. *Superior Court,* 4 Cal. 3d 699, 707, 484 P. 2d 84, 89 (1971), particularly when it would seem likely that the owner would claim his car and its contents promptly, at least if it contained valuables worth protecting.[18] Even if the police had cause to believe that the impounded car's glove compartment contained particular valuables, however, they made no effort to secure the owner's consent to the search. Although the Court relies, as it must, upon the fact that respondent was not present to make other arrangements for the care of his belongings, *ante,* at 375, in my view that is not the end of the inquiry. Here the police readily ascertained the ownership of the vehicle, Record 98–99, yet they searched it immediately without taking any steps to locate respondent and procure his consent to the inventory or advise him to make alternative arrangements to safeguard his property, *id.,* at 32, 72, 73, 79. Such a failure is inconsistent with the rationale that the inventory procedure is carried out for the benefit of the owner.

The Court's result in this case elevates the conservation of property interests—indeed mere possibilities of property interests—above the privacy and security in-

---

[17] While evidence at the suppression hearing suggested that the inventory procedures were prompted by past thefts at the impound lot, the testimony refers to only two such thefts, see *ante,* at 366 n. 1, over an undisclosed period of time. There is no reason on this record to believe that the likelihood of pilferage at the lot was higher or lower than that on the street where respondent left his car with valuables in plain view inside. Moreover, the failure of the police to secure such frequently stolen items as the car's battery, suggests that the risk of loss from the impoundment was not in fact thought severe.

[18] In fact respondent claimed his possessions about five hours after his car was removed from the street. Record 39, 93.

terests protected by the Fourth Amendment. For this reason I dissent. On the remand it should be clear in any event that this Court's holding does not preclude a contrary resolution of this case or others involving the same issues under any applicable state law. See *Oregon v. Hass,* 420 U. S. 714, 726 (1975) (MARSHALL, J., dissenting).

Statement of MR. JUSTICE WHITE.

Although I do not subscribe to all of my Brother MARSHALL's dissenting opinion, particularly some aspects of his discussion concerning the necessity for obtaining the consent of the car owner, I agree with most of his analysis and conclusions and consequently dissent from the judgment of the Court.