SMITH, Circuit Judge,
concurring.
I concur in the judgment affirming the District Court’s order denying Gregory Morris’s motion to suppress the cocaine and crack cocaine. I write separately because even if the interpretation of the policy as articulated by Judge Nygaard in his opinion is wrong, as the dissent contends, the inventory search was not constitutionally infirm simply because the officers failed to comply with a requirement of the policy. Instead of the bright-line rule applied by the dissent—ie., if there is a violation of the policy, the search is unconstitutional—I submit that the better approach is set forth in South Dakota v. Opperman, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), and its progeny.
I.
In Opperman, 428 U.S. at 364, 96 S.Ct. 3092 the Supreme Court considered the constitutionality of an inventory search of a vehicle. The Court acknowledged that inventory searches are performed “in response to three distinct needs: the protection of the owner’s property while it remains in police custody; the protection [of] the police against claims or disputes over lost or stolen property; and the protection of the police from potential danger.” Id. at 369, 96 S.Ct. 3092 (citations omitted). In deciding that these “caretaking procedures” were constitutionally permissible, the Supreme Court explained that the probable cause approach is unhelpful unless the “protective procedures are a subterfuge for criminal investigations.” Id. at 370 n. 5, 96 S.Ct. 3092. Rather than focusing on whether there is probable cause to believe the defendant has committed a crime, the inquiry is whether, considering “all the facts and circumstances,” the inventory search was reasonable under the Fourth Amendment. Id. at 375, 96 S.Ct. 3092. The Court declared that its decisions “point unmistakenly to the conclusion ... that inventories pursuant to standard police procedures are reasonable.” Id. at 372, 96 S.Ct. 3092.
More than a decade later, in Colorado v. Bertine, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Supreme Court revisited the constitutionality of inventory searches. In that case, the inventory search was conducted pursuant to a policy, but the policy allowed the officers to either conduct the inventory or remove the vehicle to an impound lot. Bertine argued, inter alia, that the discretion afforded by the policy to inventory or impound rendered the search unconstitutional. The Court rejected this argument. It began its analysis by reiterating that “inventory searches are a well-defined exception to the warrant requirement of the Fourth Amendment.” Id. at 371, 107 S.Ct. 738. It highlighted Opperman’s finding that there were strong governmental interests behind the caretaking procedures, and observed that its “cases accorded deference to police caretaking procedures designed to secure and protect vehicles and their contents within police custody.” Id. at 372, 107 S.Ct. 738 (citations omitted). Consistent with this observation, the Bertine Court reasoned that the existence of an alternative to the inventory did not render the search constitutionally infirm, and concluded that “reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment....” Id. at 374, 107 S.Ct. 738 *830 (emphasis added). In addition, the Court explained that the discretion to inventory or impound the vehicle did not invalidate the search. It declared that “[n]othing in Opperman or Lafayette prohibits the exercise of police discretion so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.” Id. at 375, 96 S.Ct. 3092.
Thereafter, in Florida v. Wells, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), the Supreme Court considered whether an inventory search of an automobile and several closed containers therein was reasonable. The record did not reveal any evidence that a policy governed the search. Chief Justice Rehnquist reiterated that some discretion is permissible, id. at 4, 110 S.Ct. 1632, and explained that “[o]ur view that standardized criteria or established routine must regulate the opening of containers is based on the principle that an inventory search must not be a ruse for general rummaging in order to discover incriminating evidence.” Id. A search conducted in the absence of a policy, however, is constitutionally infirm. Id. at 5, 110 S.Ct. 1632.
Thus, Opperman and its progeny instruct that the initial inquiry in reviewing the constitutionality of an inventory search is whether there is a policy that is sufficiently detailed that it limits the discretion of the officers conducting an inventory search and precludes such a search from being a subterfuge for investigating other crimes. See Wells, 495 U.S. at 5, 110 S.Ct. 1632; Bertine, 479 U.S. at 372, 107 S.Ct. 738. Without a policy to guide the officers, the inventory search is unconstitutional. If the policy exists and satisfies the requirements of Opperman and its progeny, the next step is to determine if there was compliance with the policy.
Compliance with the policy for inventory searches ends the inquiry and there is no basis for suppressing evidence obtained from such an inventory search. But contrary to the dissent’s approach, I submit that an inventory search is not constitutionally invalidated simply because the officers have not rigidly adhered to some term of the policy. It is my view rather, that if a deviation from the policy has occurred, the next step in the inquiry must be whether the officers conducting the search acted in good faith by attempting to comply with the policy and to accomplish the caretaking purpose of such inventory searches. See Bertine, 479 U.S. at 374, 107 S.Ct. 738 (concluding that “reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment ....”) (emphasis added); Opperman, 428 U.S. at 369, 370 n. 5, 376, 96 S.Ct. 3092 (“describing the reasons for inventory searches to be performed and pointing out that the caretaking procedures cannot be used as a means to investigate for evidence of other criminal activity”).
As Opperman instructs, the inquiry “as in all Fourth Amendment cases,” should “look to all the facts and circumstances of [the] case....” 428 U.S. at 375, 96 S.Ct. 3092. In cases such as the one we consider today, the court should determine whether the policy at issue failed to specify the procedure to be employed for the specific factual scenario presented in the case, such that the officers conducting the search can reasonably be excused from following one or more general rules of the policy.
II.
Here, the policy at issue was detailed and appropriately limited the discretion of the officers in conducting the search. The policy explained that a “motor vehicle inventory is an administrative measure” designed to accomplish the caretaking *831 purposes spelled out in Opperman. It instructed that a search “pursuant to a criminal investigation or with the intent of discovering evidence of a crime” is not covered by the policy and is not administrative in nature. The policy required that an inventory search be conducted of any vehicle seized or impounded, and that such an inventory search should be conducted in the location at which the vehicle is seized. The owner/operator of the vehicle to be searched “shall be asked to remove” all valuables or “shall be requested to verify the completeness of the inventory by signature.” The policy provided that the search “may extend to all areas of the vehicle in which personal property or hazardous material may reasonably be found.... ” In addition, the policy instructed that “[a]ll closed containers found within the vehicle shall be opened....” In the event a closed container was locked, the policy addressed how such containers were to be handled.
The officers arguably did not comply with one of the rules of the policy, however, because it required the owner/operator to either remove any contents or to verify the completeness of the inventory. Thus, we must consider whether the police officers conducted the search in good faith by attempting to comply with the policy insofar as the circumstances allowed, and whether they otherwise acted with the intent to fulfill the caretaking purpose of the policy. I conclude that they acted in good faith.
The policy at issue did not address the factual scenario presented to the officers, i.e., how an inventory search was to be completed if the owner/operator was not available at the time the search was to be conducted and was unable to remove or to verify the completeness of the inventory. In fact, if the vehicle had been removed without the inventory search being conducted at the roadside, the officers would have arguably violated the policy’s requirement that the search should be conducted at the location where the vehicle is seized. Accordingly, the police officers complied with the policy to the extent that the circumstances would allow.
Further, other than the fact that Morris was not detained at the site to remove his property or verify the search, Morris did not identify any other deficiency in the officers’ search of the truck. The officers’ testimony indicated that the search was conducted for the purpose of inventorying the contents of the truck and that they did not anticipate that this arrest involved anything more than a driving under the influence offense. This evidence supports the District Court’s finding that the search was not “conducted in bad faith or to investigate for evidence of crimes.” This finding is not clearly erroneous.
Accordingly, I conclude that the inventory search, though arguably violative of one of the general terms of the policy, was not constitutionally infirm given the circumstances of this case. For that reason, I would concur in the judgment affirming the District Court’s order denying Morris’s motion to suppress the drugs which were discovered during the inventory search of his truck.