## VERNON ANDREW MULLINS *v.* STATE OF MARYLAND

[No. 789, September Term, 1976.]

*Decided April 12, 1977.*

The cause was argued before MOYLAN, DAVIDSON and MASON, JJ.

*John W. Sause, Jr., District Public Defender*, with whom was *Alan H. Murrell, Public Defender*, on the brief, for appellant.

*Kathleen Sweeney, Assistant Attorney General*, with whom were *Francis B. Burch, Attorney General, Arrie W. Davis, Assistant Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County*, and *Paul S. Podolak, Assistant State's Attorney for Cecil County*, on the brief, for appellee.

MOYLAN, J., delivered the opinion of the Court.

The appellant, Vernon Andrew Mullins, was convicted by a Cecil County jury, presided over by Judge J. Albert Roney, Jr., of receiving stolen truck tires. We need concern ourselves only with his contention that the stolen truck tires were the fruit of an unconstitutional search and seizure and should have been excluded from evidence.

The appellant was arrested warrantlessly on October 22, 1975. The stolen truck tires were recovered from the van in which the appellant had been riding. The appellant timely sought and received a pretrial hearing on his motion to suppress the evidence. He asserts error in the denial of that motion.

It is undisputed that the van in which the tires were found was searched warrantlessly. It is undisputed that the search of the van after its two passengers had been removed from it, after it had been locked, and after it was subsequently towed to a police garage cannot be justified upon any theory of warrantless search incident to lawful arrest under *Chimel v. California*, 395 U. S. 752, 89 S. Ct. 2034, 23 L.Ed.2d 685 (1969). It is clear to us, upon our own independent, reflective, constitutional judgment that the warrantless search cannot be justified under the *Carroll* Doctrine because of the absence of probable cause to believe that the van contained evidence of crime. *Carroll v. United States*, 267 U. S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). The hearing judge rested his ruling essentially upon his finding that the police were conducting a routine inventory of the

van's contents after having lawfully taken it into their caretaking custody. *South Dakota v. Opperman,* 428 U. S. 364, 96 S. Ct. 3092, 49 L.Ed.2d 1000 (1976).

It is unnecessary for us to address the troublesome question, on the facts of this case, of whether the police were not bent upon a criminal investigation rather than upon an innocuous and non-criminally oriented listing of chattels, because the State cannot surmount its initial hurdle of showing that it lawfully took control of the vehicle in the first instance.

The van was stopped on a small side road just off a State highway in Cecil County. It was occupied by the appellant, as a passenger, and by the driver, Charles Edward Tackett. Mr. Tackett was the nephew of the appellant. Mr. Tackett was also a duly authorized driver in lawful possession of the van. The indispensable predicate for the taking of the van into caretaking custody by the police was the incapacity of either the appellant or Mr. Tackett lawfully to take the van and go upon his way. With no other incapacities remotely applicable, the only incapacity here pertinent would be the lawful arrest of both of those persons whose rightful and appropriate custody would have prevailed over that of the police.

The primary police focus was upon the appellant and not upon Mr. Tackett. Mr. Tackett's only arguable guilt of any sort arose out of his association with the appellant. The appellant, in turn, was not wanted for any crime perpetrated against the laws of this sovereignty. The police theory for their warrantless arrest of the appellant is that he was a known fugitive from Delaware justice. The predicate for that theory was exceedingly skimpy. Most of the evidence proffered by the State at the suppression hearing has to be factored out because of its after-the-fact character. The State boldly asserted that it arrested the appellant on a fugitive warrant issued by the District Court of Maryland based upon a Delaware warrant, but it developed that that warrant was issued subsequent to the warrantless arrest upon the highway. At another point, the State referred to "roughly 30 plus counts of felonies involving auto theft or

related counts," but it developed that these warrants "were sent out under date of October 29, 1975," seven days after the warrantless arrest. When all of the after-the-fact information was factored out, the Maryland intelligence of the appellant's Delaware transgressions boiled down to a single item of information:

"Q. I believe one warrant was, and correct me if I am wrong, one warrant was issued on the 12th of November 1974 for auto theft, is that correct?

A. That is the first warrant, yes."

We are left with the single fact that a Delaware warrant was issued for the crime of auto theft eleven months before the appellant was arrested warrantlessly by Maryland police. There is no indication that Delaware had ever declared the appellant to be a fugitive or sought his return as one who had fled that jurisdiction. There is no indication that the provisions of the Federal Fugitive Felon Act were ever invoked. Indeed, there is no indication that the November, 1974, auto theft was even a felony. We notice judicially 11 Delaware Code § 841, which makes the theft of goods worth $100 or more a felony but the theft of goods of the value of less than $100 a misdemeanor. In any event, the Maryland police appear to have been without authority to arrest the appellant. Article 27, § 594B. The only arguable basis for Maryland to come to the assistance of the law enforcement arm of Delaware would be through the extradition treaty between the two sovereignties. Pursuant to the Uniform Criminal Extradition Act, codified as Article 41, § 16-43, the Governor of Delaware had never requested Maryland to render up the appellant. The only arguable basis for the Maryland arrest would be under § 28 "Arrest prior to requisition." That section, however, limits the power of arrest pending requisition to situations where a warrant is issued in this State upon "the oath of any credible person" charging that the wanted subject has committed crime in another state and has fled from justice. No such warrant was here issued by anyone. Section 14 of the Uniform Criminal Extradition Act does, to be sure, provide for

certain warrantless arrests, but that provision of the Uniform Criminal Extradition Act was *not* adopted in Maryland.

At the outset of the exclusionary hearing, however, the appellant did stipulate that his own arrest was lawful. Notwithstanding our feeling that he had strong grounds to challenge that arrest, we will not look behind that stipulation. Significantly, however, the stipulation did not go to the legality of the arrest of Mr. Tackett, to which we now turn. The circumstances surrounding the appellant's status may not, by virtue of the stipulation, be able to influence our holding with respect to his own arrest but they do bear directly upon the issue of Mr. Tackett's arrest.

Mr. Tackett's arrest falls, both upon the law and upon the facts. The basis for Mr. Tackett's warrantless arrest was made very clear:

> "Q. And Tackett was arrested because of the facts that you have related and made up a probable cause to believe that Tackett knowingly was harboring the Accused, Mullins?
> A. That is right."

Even assuming that harboring is some sort of a crime, we cannot, upon our own independent, reflective, constitutional judgment, conclude that there was probable cause to believe that Mr. Tackett was "harboring." The State attempted to show that Mr. Tackett was present in Delaware when a search and seizure warrant was executed on property belonging to Mullins and was at that time warned "that if he aided Mullins he would be in trouble with the law for aiding Mullins," but the date of that incident was given as "December of '75," two months after the warrantless arrest in this case. The State attempted to inject the fact "Tackett drove Mullins to Kentucky" but the F.B.I. agent who was the secondary source for that information gave no "basis of knowledge" under *Aguilar v. Texas*, 378 U. S. 108, 84 S. Ct. 1509, 12 L.Ed.2d 723 (1964).

The single allegation remaining in the case from a

citizen-informer who ostensibly spoke from firsthand knowledge was the following:

"Q. Now, the informer told you that for what, several months prior to arrest, Tackett was in fact driving Mullins around?

A. That is correct."

We cannot extrapolate from the fact that the appellant was wanted for an auto theft in November, 1974, and from the fact that Mr. Tackett was driving his uncle around almost a year later the conclusion that Mr. Tackett was harboring a fugitive. Delaware never charged Mr. Tackett with anything and apparently did not want him. The appellant, the man who was being driven around, had not violated any laws in this State, so far as the police knew, and had not been declared to be a fugitive by anyone. We see no factual support for the thing charged.

Moreover, we see no legal significance to the charge. The State, at the suppression hearing and upon appeal, has not asserted precisely what crime Mr. Tackett was arrested for, statutory or common law. No elements of this vague charge of "harboring a fugitive" have been set out so that we may test the present facts against those elements. Must "fugitive" status be established? Must the original crime have been a felony? Must there have been a conviction and subsequent escape as opposed to a mere charge? Would the act of harboring be a Delaware crime or a Maryland crime? The State has not sought to enlighten us in any of these regards.

We hold that the warrantless arrest of Mr. Tackett was unconstitutional. The subsequent search of his van was also unconstitutional under the "fruit of the poisonous tree" doctrine. The unlawful arrest was the primary illegality. But for that illegality, Mr. Tackett would have been privileged to drive the van away. The subsequent taking of the van into custody by the police was the exploitation of the primary illegality. *Wong Sun v. United States*, 371 U. S. 471, 83 S. Ct. 407, 9 L.Ed.2d 441 (1963).

As an invitee in his nephew's van, the appellant enjoyed derivative standing under *Cecil Jones v. United States*, 362 U. S. 257, 80 S. Ct. 725, 4 L.Ed.2d 697 (1960), to challenge the unconstitutional seizure of the van which led directly to the inventory search thereof.

*Judgment reversed; costs to be paid by Cecil County.*