878 F.2d 1436
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
John Nathaniel HILL, Defendant-Appellant.
 No. 88-3825.
 United States Court of Appeals, Sixth Circuit.
 July 10, 1989.
 
 Before KEITH, KENNEDY and RYAN, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendant John Nathaniel Hill ("Hill"), appeals from the judgment of the district court finding him guilty of possession with intent to distribute cocaine. Hill contends that the district court erred by denying his motion to suppress evidence. For the reasons set forth below, we AFFIRM.
 
 I.
 A.
 
 2
 On June 2, 1988, a federal grand jury returned a three-count indictment against Hill. Count I charged that Hill possessed with intent to distribute 198 grams of cocaine base, commonly known as "crack," in violation of 21 U.S.C. Sec. 841(a)(1). Count II charged that Hill possessed with intent to distribute 120 grams of cocaine, in violation of 21 U.S.C. Sec. 841(a)(1). Count III charged that Hill unlawfully carried a firearm during a drug trafficking crime, in violation of 18 U.S.C. Sec. 924(c).
 
 
 3
 Hill's motion to suppress evidence was heard on July 15, 1988. After receiving testimony and reviewing opposing counsel's memorandum of law, the court on July 18, 1988 denied Hill's motion to suppress.
 
 
 4
 On July 25, 1988, Hill entered a conditional plea of guilty to Count II of the indictment, pursuant to Fed.R.Crim.P. 11(a)(1), and reserved the right to appeal the adverse determination of the district court on his motion to suppress. In accordance with the plea agreement, Counts I and III of the indictment were dismissed.
 
 
 5
 On August 26, 1988, Hill was sentenced to eighty-four months imprisonment.
 
 B.
 
 6
 On April 27, 1988, Sergeant Larry Baird ("Sgt. Baird") of the Ohio State Highway Patrol was driving on Interstate 71 in Delaware County, Ohio. Sgt. Baird observed Hill drive his 1984 Oldsmobile Cutlass off the highway onto the right-hand berm and stop. Believing that Hill was having car trouble, Sgt. Baird pulled in behind Hill's car to provide assistance. Hill stated to Sgt. Baird, "I need a tow truck." Sgt. Baird responded that he would call a tow truck, but asked to see Hill's driver's license and vehicle registration first. After Hill failed to produce both these documents, Sgt. Baird radioed the Highway Patrol Post. Sgt. Baird then learned that Hill did not have a valid Ohio driver's license and that his Florida license had expired. Sgt. Baird further determined that the 1984 Oldsmobile driven by Hill carried license plates that belonged to a 1978 Chevrolet. In addition, the Oldsmobile was not registered to Hill, but to a person living in Florida.
 
 
 7
 After receiving this information, Sgt. Baird placed Hill under arrest for driving without a license. Hill was handcuffed; placed in the patrol cruiser; and informed that his car would be towed and subjected to an inventory search.
 
 
 8
 During the course of the inventory search, Sgt. Baird noticed a cheese ball container on the front seat of the car. After making a cursory examination of the container, Sgt. Baird determined that it had a false bottom. Sgt. Baird then cut through the false bottom of the container and observed small plastic bags that appeared to contain "crack." Proceeding with the inventory search, Sgt. Baird looked under the front seat and found a velvet bag intended to carry Seagram's whiskey. Sgt. Baird opened this bag, finding a small plastic bag that appeared to contain marijuana and a toilet paper roll that housed a small plastic bag containing a white powder. Continuing the inventory of the vehicle at the Highway Patrol Post, Sgt. Baird opened the trunk and found a gallon-size, opaque plastic storage bag. Sgt. Baird opened the bag and learned that it held a shaving kit; $3,000.00 cash; a loaded, Raven 25 automatic pistol; and several small plastic bags containing a white powder.
 
 
 9
 At the July 15, 1988 suppression hearing, Sgt. Baird testified that the inventory search is a required search, pursuant to the Ohio State Highway Patrol's administrative regulations (the "Ohio regulations"). Sgt. Baird then explained that he cut open the cheese ball container to determine what was inside. He stated that he knew of no other method to determine the contents of the container. Sgt. Baird continued that he understands that an inventory search is "simply a matter of making a list of what's in the car." After his testimony, Sgt. Baird was shown a copy of the Ohio regulations. Promulgated on March 16, 1981, the Ohio regulations govern the challenged inventory search of Hill's automobile:
 
 
 10
 1. On the occasion of abandonment, traffic accidents and certain arrest actions, it is necessary for our officers to remove motor vehicles from the scene to a location of greater security. The justification for an inventory which is an administrative function is:
 
 
 11
 a. To protect the owner's property when the owner is unable to do so.
 
 
 12
 b. To protect the officer and the division against possible civil liability.
 
 
 13
 c. O.S.H.P. Rules and Regulations, Article IV. Section 3, Recovered Property, states in part that "a member shall carefully protect and preserve for proper disposition any article or property recovered or turned over to the officer after loss by its rightful owner, held as evidence, taken from a prisoner or otherwise entrusted to the officer's care."
 
 
 14
 d. The scope of the inventory and the level of security for the property which is inventoried is the responsibility of the officer whose signature appears on the appropriate inventory report.
 
 
 15
 e. This Division's policy and procedures are to inventory all vehicles with which we become involved where the owner or agent of the owner is unable to assume control of the property.
 
 
 16
 2. While it cannot be the officer's purpose to look for evidence of crime, if contraband or other incriminating materials are discovered during the course of a required inventory, the officer will take the appropriate enforcement action.
 
 
 17
 3. Recent court opinions have reflected that luggage has a greater expectation of privacy than does a vehicle. Any evidence found via the inventory of the contents of personal luggage is not admissible in court.
 
 
 18
 Ohio St. Hwy. Patrol Reg. (quoted in United States v. Hill, No. CR-2-88-101, mem. op. at 5 (S.D.Ohio July 18, 1988)).
 
 II.
 
 19
 On appeal, Hill contends that the search of his vehicle exceeded the scope of an inventory search permitted by the Ohio regulations. Hill also alleges that at the suppression hearing, Sgt. Baird admitted that the inventory search was not undertaken to protect property, but to gather evidence incriminating Hill. Thus, Hill urges that his fourth amendment rights were violated by Sgt. Baird's search of the vehicle.
 
 A.
 
 20
 The Supreme Court has deemed the inventory search of an automobile to be a well-defined exception to the warrant requirement of the fourth amendment. See Illinois v. Lafayette, 462 U.S. 640, 643 (1983). In South Dakota v. Opperman, 428 U.S. 364 (1976), the Court considered the reasonableness of an inventory search in the glove compartment of an abandoned car impounded by the police. The Court explained that inventory procedures are intended to secure an owner's property while it is in the custody of the police; to prevent vandalism, theft, and property loss; and to protect the police from danger. See id. at 369. Invoking these strong governmental interests and the diminished expectation of privacy in an automobile, the Opperman Court upheld the challenged inventory search. See id. at 368 (citing Cady v. Dombrowski, 413 U.S. 433, 442 (1973)).
 
 
 21
 In a more recent Supreme Court decision, Colorado v. Bertine, 479 U.S. 367 (1987), a Boulder, Colorado police officer arrested Bertine for driving his van while under the influence of alcohol. After Bertine was taken into custody, another officer, acting in accordance with local police procedures, inventoried the contents of the van and opened a closed back pack containing controlled substances, drug paraphernalia, and a large amount of cash. See id. at 369. Upholding the search in spite of Bertine's fourth amendment challenges, the Court invoked the legitimate governmental interests identified in Opperman. After finding no evidence that the arresting officers acted in bad faith, the Court held that "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." See id. at 366. Reaffirming its commitment to police safety, the Court then returned to the principles expressed in United States v. Ross, 456 U.S. 798 (1982):
 
 
 22
 When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle, must give way to the interest in the prompt and efficient completion of the task at hand." Ross, 456 U.S. at 821 (quoted in Bertine, 479 U.S. at 375)).
 
 
 23
 The Bertine Court concluded that the exercise of police discretion in an inventory search is not prohibited so long as that discretion is exercised according to standard criteria and on the basis of something other than a suspicion of incriminating evidence. See 479 U.S. at 375-76.
 
 B.
 
 24
 In the case at bar, Sgt. Baird's actions were justified by the government's legitimate interests in arresting Hill for driving without a valid license and in securing Hill's automobile prior to impound. It is possible that Sgt. Baird, after deciding to perform the inventory search pursuant to the Ohio regulations, developed a suspicion that he would find evidence of a crime in Hill's car. That suspicion alone, however, would not invalidate the inventory search. Under the circumstances presented, Sgt. Baird acted reasonably to insure his personal safety; to protect Hill's property from loss, theft or police negligence; and to efficiently conduct the inventory search. See Lafayette, 462 U.S. at 647.
 
 
 25
 Although Hill contends that Sgt. Baird's inventory search exceeded the scope of local police procedures, we find that Sgt. Baird exercised reasonable discretion within the bounds of the Ohio regulations. Thus, the district court correctly concluded that:
 
 
 26
 When [Sgt.] Baird conducted an inventory of [Hill's] vehicle, he was acting pursuant to administrative policies of the Patrol. While the written guidelines do not specifically set forth the procedures to be followed for every sort of container, this does not undermine the validity of the inventory in this case. It would be impossible to anticipate all of the possible types of containers which might be encountered by an officer; indeed, [Sgt.] Baird, a Patrol officer of some twenty years, testified that he had never had occasion to inventory the contents of a cheese ball container before. United States v. Hill, No. CR-2-88-101, mem. op. at 6 (S.D.Ohio July 18, 1988).
 
 
 27
 Hill next argues that Sgt. Baird improperly cut open the false bottom of the cheese ball container. However, there were two persuasive justifications for Sgt. Baird's conduct. First, Sgt. Baird responded reasonably to the facts presented and the task required. After he found that the cheese ball container had a false bottom, it was reasonable and logical for him to conclude that something of value was hidden inside. In order to inventory the suspected items of value, Sgt. Baird justifiably opened and searched the cheese ball container pursuant to the Ohio regulations. See, e.g., Bertine, 479 U.S. at 373. See generally United States v. Ford, No. 88-3603 (6th Cir. filed Apr. 10, 1989) (holding that the inventory search of a jacket, which hung in the back seat of a car, was necessary to safeguard any valuables contained in the pockets of the jacket). Second, Sgt. Baird's act of cutting open the false bottom of the cheese ball container did not violate the law. Prior to the inventory search, Sgt. Baird was not constitutionally compelled to weigh the strength of Hill's privacy interest in the cheese ball container against the possibility that the container might serve as a repository for dangerous or valuable items.[1] See Bertine, 479 U.S. at 374.
 
 
 28
 Hill finally contends that Sgt. Baird's hearing testimony contains an admission that he inventoried the car to gather evidence of a crime.[2] Hill has failed, however, to present evidence indicating that Sgt. Baird's inventory search of the vehicle was a subterfuge for criminal investigation, rather than a standard police procedure to prevent property loss and to promote safety. In addition, Sgt. Baird testified that he chose to conduct an inventory search of Hill's car, only because such a search was required by the Ohio regulations. Sgt. Baird's good faith decision to inventory the vehicle was not invalidated by his subsequent suspicions that he would find incriminating evidence therein. See Maryland v. Macon, 472 U.S. 463, 470-71 (1985) ("Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' Scott v. United States, 436 U.S. 128, 136 (1978), and not on the officer's actual state of mind at the time the challenged action was taken.").[3]
 
 
 29
 For the reasons stated herein, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 On appeal, Hill also argues that because Sgt. Baird's search of the cheese ball container was invalid, the search of the remaining items in the vehicle, including the velvet bag under the front seat and the plastic bag in the trunk, was also invalid. We find Hill's arguments unpersuasive. First, the entire inventory search, including the search of the cheese ball container, was valid, having been conducted in accordance with the Ohio regulations. Second, even after Sgt. Baird found the controlled substances in the cheese ball container, the original justifications for his inventory search of the other items in the vehicle remained
 
 
 [2]
 In regards to the specific search of the cheese ball container, Sgt. Baird testified that upon his initial examination of the container, he removed the plastic lid; swirled the cheese balls around; and realized that there was a plastic bottom in the middle of the can. Sgt. Baird recalled that his first thought was: "This man got cheated. He's only got half a can of [cheese balls] here, and here they sold him a full can. And then, right away, it dawned on me. I said 'Something's wrong.' " Sgt. Baird then explained that after cutting open the container, he was quite surprised to find that the false bottom contained contraband
 
 
 [3]
 Hill raised two other arguments on appeal. Hill challenges the district court's additional holdings: first, that Sgt. Baird's inventory search of Hill's car was a valid probable cause search, pursuant to United States v. Ross, 456 U.S. 798 (1982); and second, that Sgt. Baird's inventory search of Hill's car was a valid search incident to arrest, pursuant to New York v. Belton, 453 U.S. 454 (1981). Because we choose to uphold the inventory search of Hill's automobile under the doctrines of Opperman and Bertine, it is not necessary to address the arguments arising from Ross and Belton