**5**

UNITED STATES of America, Plaintiff,

v.

Roberto GOMEZ–SANTIAGO a/k/a Gomez a/k/a Tito, Miguel A. Irizarry–Ortiz a/k/a Charlie a/k/a Viejo Charlie, Alfredo Martinez–Figueroa a/k/a Freddie, Carlos Cruz–Martinez a/k/a Charlie Boutique, Ricardo Rivera–Velez a/k/a Richie, Julio Enrique Soto–Figueroa, Edward Leandry–Pumarejo, Defendants.

Crim. No. 93–0176CCC.

United States District Court,
D. Puerto Rico.

July 5, 1994.

Guillermo Gil, U.S. Atty., Washington, DC, Edwin O. Vázquez, Asst. U.S. Atty., Hato Rey, PR, for plaintiff.

**6**

Frank D. Inserni, Hato Rey, PR, for defendants.

### ORDER

CEREZO, Chief Judge.

■ On September 3, 1993, defendant **Roberto Gómez–Santiago** filed a Motion Requesting Suppression of Vehicles and All Documents Illegally Seized From Said Vehicles (**docket entry 100**). In this motion, reference is only made to the search of a Mazda 929, property of Gómez–Santiago, and the documents seized from that vehicle. The government filed an opposition to that suppression motion on September 10, 1993 (**docket entry 103**), classifying the search of the Mazda 929 as an inventory search, one of the exceptions to the warrant requirement. A brief observation was made in the sense that "searches of car held for forfeiture have been approved." A hearing was held before the Magistrate Judge, who issued a first ruling recognizing the standing of defendant Gómez–Santiago to seek suppression. The case was remanded to conduct a further hearing on the merits of the suppression claim. A suppression hearing was then held on February 22, 1994. Since it is undisputed that this was a warrantless search, the government had the burden of proving that it fell within one of the recognized exceptions to meet defendant's challenge that it was *per se* unreasonable under the Fourth Amendment. To that end, the United States presented the testimony of Roberto Escobar, Special Agent for the U.S. Customs Service, who conducted the search. He was the sole witness at this hearing. The inventory list prepared by him of the two Gómez–Santiago vehicles[1] and the Customs forms 6051, the custody receipts for seized property, were admitted as evidence.

The whole thrust[2] of Agent Escobar's testimony, both in direct and cross-examination, was directed at the manner in which he conducted the search and its purpose. After a careful reading of the transcript of his testimony, the Court concluded in an order issued on March 30, 1994 (docket entry 165) that what he conducted was an investigatory search, not a true inventory procedure. The inventory process was clearly disguised and used as a pretext for obtaining incriminating evidence without a warrant.

■ The United States has now moved for reconsideration of our March 30, 1994 order (docket entry 165). Having reviewed that motion, the Court reasserts its firm conviction that Agent Escobar's statements revealed that, contrary to the prohibitions established by the Supreme Court in *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987) and *Florida v. Wells*, 495 U.S. 1, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990), the search conducted by him was nothing but a subterfuge to obtain incriminating evidence during his investigation. No reasonable person could conclude otherwise after considering his repeated admissions that the objective of his search was to obtain evidence to advance the criminal investigation.[3] This was not the caretaking, administrative function which characterizes the true inventory search which is aimed at protecting the owner's property while it remains in police custody, the protection of the police against claims or disputes over lost or stolen property, and the protection of the police from potential danger. *South Dakota v. Opperman*, 428 U.S. at 368, 96 S.Ct. at 3097. In addition to the agent admitting the investigative goal of the search and acknowledging that he was unfamiliar with the standard inventory procedures of his agency, the fact that he took it upon himself, in his desire to secure incriminating evidence, to read the contents of the documents is another significant indicator that the inventory exception was improperly raised.

This, however, does not end our inquiry. The United States, for the first time, has

---

1. Although the motion to suppress referred only to the Mazda 929, the uncontroverted testimony of Agent Escobar was that he searched two vehicles described as a 1989 Mazda and a 1986 Jeep Comanche.

2. There was important testimony on cross, however, relevant to the determination of probable cause to search which will be discussed later.

3. *See* transcript, pp. 21–32.

discussed at length the forfeiture exception in its motion for reconsideration. Defendant did not address the issue.

 The warrantless search of a vehicle subject to forfeiture was addressed by the Court and found valid in *Cooper v. California*, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1967). Disagreement over the type of search without a warrant that could follow the forfeiture of the vehicle seems to have been resolved by the Supreme Court in *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)[4]. There the Court established the bright line rule to be applied to searches of vehicles that are supported by probable cause. The Court recognized that the protection afforded by the Fourth Amendment varies in different settings. The inventory search, because of its limited scope and special characteristics as an administrative procedure, does not require a probable cause determination. *Ross*, however, refers to the type of search that requires a determination of probable cause by the agent or officer that the vehicle is believed to contain contraband. In such a situation, the Court found that "an individual expectation of privacy in a vehicle and its contents may not survive if probable cause is given to believe that the vehicle is transporting contraband." *Id.*, 456 U.S. at p. 823, 102 S.Ct. at p. 2172. The Court further explained that "[t]he scope of a warrantless search based on probable cause is not narrower—and not broader—than the scope of a search authorized by a warrant supported by probable cause. Only the prior approval of the magistrate is waived; the search otherwise is as the magistrate could authorize." *Id.*

The probable cause determination that validates the search of a car believed to contain contraband has been used in the specific context of forfeiture cases, such as *U.S. v. La Vecchia*, 513 F.2d 1210 (2d Cir.1975), *U.S. v. Panebianco*, 543 F.2d 447 (2d Cir.1976) and *U.S. v. Johnson*, 572 F.2d 227 (9th Cir.1978).

As stated in *Searches and Seizures, Arrests and Confessions*, § 11.5(b), at p. 11–35, "the very nature of forfeiture virtually assures that such probable cause will exist with regard to the seized vehicle."[5]

 Against this backdrop, we must examine the circumstances surrounding the warrantless search in this case to determine whether they fall under the exception recognized by *Ross* which validates warrantless searches of vehicles whenever the law enforcement officer determines that probable cause exists to believe that the vehicle contains contraband.

The transcript of the testimony of Agent Escobar at the suppression hearing is relevant.

Pages 3–4:

Q Okay. And what evidence, if any, did you have or the basis for those two vehicles that were seized on that date?

A The information—the evidence that we have is that both vehicles were used by the Defendant to facilitate the commission of the crime that he's been charged with.

Q Okay. And what type of crime he has been charged, if you know?

A Drug smuggling.

Q Okay. And that information that you have, who provided that information to you?

A The information was provided by a co-defendant on this case.

Page 36:

Q You told Mr. Quiñones that your probable cause was based on his testimony to you before you arrested Mr. Gómez, as to Mr. Gómez' involvement in this case, right?

A That's correct.

Q And this—this includes the use of these two vehicles for drug smuggling?

---

4. Our Circuit in *United States v. One 1975 Pontiac Lemans, Etc.*, 621 F.2d 444 (1st Cir.1980), anticipated two years before *Ross* the constitutionality of a warrantless search incidental to forfeiture, "undergirded by probable cause", without an exigency requirement.

5. 21 U.S.C. § 881(b)(4) allows forfeiture without a warrant when the Attorney General has probable cause to believe that the property is subject to civil forfeiture under the statute.

**8**

A They include the use of the vehicles to facilitate, yes.

Pages 15–16:

Q The information basically that you have was that Mr. Rodríguez Caraballo and Mr. Gómez were transporting, in the Jeep and in the Mazda, at some initial stages of this process to bring drugs to the United States, and that's basically it?

A That and some meetings that they held.

Q The same day?

A On that—

Q That same trip?

A On that same date they had a meeting, yes.

Q So, they met and they traveled in those two automobiles? That's what you basically have in terms of information concerning his participation that the informant knows directly?

A That's correct.

Q Now, isn't it a fact that this man is a drug user?

A I believe he's used drugs, yes.

Q And that is your probable cause to believe that those automobiles were used in this drug transaction?

A That's correct.

■ The testimony of agent Escobar reveals the existence of probable cause to believe that the two vehicles were subject to forfeiture because they were used in the transportation of drugs in the criminal enterprise charged. Pursuant to *Ross,* the same determination of probable cause that allows the agent to seize the vehicles without process and subjects them to civil forfeiture under 21 U.S.C. § 881(b)(4) also validates the warrantless search subsequent to their seizure.

For these reasons, the government's Opposition to defendant's Motion to Suppress (**docket entry 103**) is GRANTED, and defendant Gómez–Santiago's Motion Requesting Suppression of Vehicles and all Documents Illegally Seized from Said Vehicles (**docket entry 100**) is DENIED.

**SO ORDERED.**