OPINION
Defendant-appellant, Billy Gipson, was tried in a two day bench trial in the Warren County Court of Common Pleas on July 21 and 22, 1997. Appellant was convicted on the following counts: rape, aggravated burglary, two firearm specifications related to the rape and aggravated burglary counts, attempted kidnapping and attempted murder. Appellant filed a timely notice of appeal on July 25, 1997. Appellant contends that the aggravated burglary conviction was based on evidence insufficient to establish all the elements of the crime, that the convictions on all counts were against the manifest weight of the evidence, and that he received ineffective assistance of counsel at trial.
The events at issue involve appellant's conduct toward Dawn Simons, his ex-wife ("Simons"), who was in the process of divorcing appellant as of February 27, 1997. According to Simons' testimony, on the evening of February 27, 1997 after staying late at her job as a manager at Kings Island, she left work at approximately 9:30 p.m. When she arrived at her home, 872 Arrowood Court in Lebanon, Ohio, appellant pulled into the garage behind her and stopped his van. Since the divorce proceedings began in January 1997, a temporary protective order existed which barred appellant from going to Simons' home. Contacts between appellant and Simons had been limited to phone conversations and meetings at public restaurants.
Simons testified that appellant brandished a gun from his left pocket and told her that he would use the gun if she did not follow instructions. Appellant ordered Simons to get into the van and he drove north to near Trotwood, Ohio. At that point, appellant told Simons there was a cornfield nearby in which he had chosen to kill her, but he did not drive the van to the cornfield. He also mentioned to Simons how he had the opportunity "to blow [her] brains out" when she was in a beauty salon the day before. Appellant further stated if the divorce was not on his terms he would kill her and that he had "made arrangements" for someone to kill her if he went to jail.
He then pulled into an apartment complex in the vicinity of Trotwood where, at gunpoint, he made Simons write a statement in which she stated that she willingly went with appellant in the van, that she was going to stop the divorce, and that they would attempt reconciliation. Appellant then returned with Simons to her house in Lebanon.
Still in possession of the handgun, appellant forced Simons upstairs to the bedroom of her house, then forced her to remove her clothes and go into the bathroom. Appellant then checked her body for marks in order to determine if she had sexual intercourse with anyone. Appellant told Simons that "there better not be anyone under the bed because he would kill them." Then, appellant forced Simons to have sexual intercourse with him.
After briefly letting Simons go downstairs, appellant ordered Simons upstairs and sat by the bedroom door at the top of the stairs while she was in the bedroom. Simons fell asleep at about 3:00 or 3:30 a.m., and was subsequently awakened at 5:00 a.m. Appellant had the gun cocked, and was concerned that the police were outside and that he would be in violation of the temporary protection order. Simons did not go back to sleep and her alarm went off at 6:00 a.m. Shortly thereafter, appellant told Simons he knew she had to get to work early. Simons was taking a shower in preparation for work when her neighbor, Phyllis Hutchinson, called. Appellant answered the phone and Hutchinson asked for Simons. After appellant gave Simons the phone, Simons told Hutchinson that she was fine and returned the phone to appellant. Hutchinson testified that it was unusual for Simons to end a conversation with such brevity.
Appellant told Simons he would go with her to work so "he would have a chance to get away." Instead, appellant followed Simons to a Wal-Mart in Lebanon and he then drove away.
Later that day, Simons spoke with Officer Robb White and Detective Don McKinney of the Lebanon Police Department. McKinney, as the chief investigative officer for the case, took a report and began an investigation. McKinney testified it is not unusual that charges are not immediately brought in a sexual assault situation in order to conduct an investigation and confer with the prosecutor. Simons testified she was too emotionally upset to "know what [she] wanted" at that point. However, based on McKinney's advice, Simons subsequently called McKinney to pursue the investigation. An appointment was set up for 6:00 or 6:30 p.m. on March 8, 1997.
According to appellant's testimony, he met Simons at a Big Bear store parking lot on the evening of February 27, 1998, and she invited him back to her home. He testified he did not threaten Simons with a gun and they did not have sexual intercourse that evening. Appellant also stated that the phone call with Hutchinson was short because Simons was in the shower and gave the phone back to him because she did not want to be electrocuted. He stated that Simons agreed he would follow her out of the house when she went to work. Appellant stated he was concerned what Hutchinson might do since he had violated the temporary protection order.
The testimony of appellant and Simons also conflicted concerning events which occurred on March 8, 1997, the same day appellant was to meet with McKinney regarding the actions of appellant on February 27. According to Simons, she was leaving the Lebanon post office at about 12:30 p.m. when she heard appellant call her name. Appellant told Simons to get in her car. He then took the keys, drove the car out of the parking lot onto South Street and parked the car. During this time, appellant was holding a gun in his left hand. He informed Simons the gun was cocked and loaded. Appellant then told Simons to exit the car and walk toward his van which was located nearby. As they were walking, Simons attempted to use pepper spray on appellant but failed. In response, appellant attempted at least two times to fire his gun at Simons' chest, but the gun misfired. Simons then tried to knock the gun out of his hand with her purse, but appellant pinned her against the van, and hit Simons with the gun, causing multiple lacerations to her head. After leaving the scene, appellant hitchhiked a ride to Dayton and later turned himself into the Lebanon police.
According to appellant, Simons originally had the gun and pointed the gun at appellant. He then successfully took the gun away from her. At that point, Simons continued to flail at appellant with her purse. In order to defend himself, appellant struck Simons on the head with the gun, the intensity increasing with each blow. He then left the scene of the incident, and after hitchhiking to Dayton, turned himself in to Lebanon police.
Besides Simons and appellant, there were three witnesses to the March 8 incident. Julie Irwin testified that she heard a woman scream for someone to call the police, but she did not witness details of the altercation. Charene Brothers, who was working at a nearby gift shop, stated that she could see a man holding a gun on a woman across the street. She also testified that he was either cocking or uncocking the weapon and putting what appeared to be bullets in his pocket. Brothers identified appellant as the man she witnessed with the gun on March 8. Richard Yost testified to seeing a man with a gun in his hand and holding a woman on the ground. According to Yost, the woman was "trying to defend herself." The man put the gun in his pocket and "motioned for [Yost] to go on" but he waited at the scene and later helped Simons get to the hospital.
In his first assignment of error, appellant argues that his aggravated burglary conviction under R.C. 2911.11 was based on insufficient evidence. We disagree.
In State v. Thompkins (1997), 78 Ohio St.3d 380, 386, the Ohio Supreme Court clarified that the legal concept of sufficiency of the evidence refers to whether the conviction can be supported as a matter of law. In making this determination, the reviewing court must view the evidence in the light most favorable to the prosecution, and determine whether any reasonable trier of fact could find the appellant committed the crime beyond a reasonable doubt. State v. Jenks (1991), 61 Ohio St.3d 259, 273.
Aggravated burglary requires trespass into an occupied structure with the purpose of committing any criminal act where (1) physical harm is threatened or inflicted, or (2) a deadly weapon is in the control of the assailant. R.C. 2911.11(A). Appellant argues that because he was found not guilty of kidnapping on the night of February 27, 1998, the aggravated burglary conviction fails as a matter of law.
Simons' testimony clearly establishes that upon returning to her house, appellant forced her, by brandishing a gun, to enter the house, go upstairs, remove her clothing and have sexual intercourse with him. Appellant testified that the rape never occurred. The trier of fact, however, after reviewing the evidence, and being in the best position to judge the credibility of witnesses, convicted appellant of rape. Simons' testimony, if believed, clearly supports the aggravated burglary conviction because it presents specific and credible evidence upon which the trier of fact could decide the trespass took place with the intent to commit rape. See State v. Watkins (Oct. 26, 1987), Montgomery App. No. 10252, unreported at 3 (evidence presented at trial demonstrated an intent to rape at time of trespass). The first assignment of error is overruled.
In his second through sixth assignments of error, appellant avers that each count which resulted in a conviction was against the manifest weight of evidence. In determining whether a conviction is against the weight of the evidence, the appellate court reviews the record as a "thirteenth juror." Thompkins, at 387. A reversal is warranted when the appellate court disagrees with the resolution of conflicting testimony at the trial level. Id. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. Hawkins (1993), 66 Ohio St.3d 339, 344. The standard for reversal for manifest weight of evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins at 387.
The second assignment of error states the conviction for aggravated burglary was against the manifest weight of the evidence. As previously stated, Simons testified that appellant used a gun to force her into her house and rape her. This testimony provides credible evidence for the aggravated burglary conviction. The second assignment of error is overruled.
The third assignment of error avers that the conviction for rape is against the manifest weight of evidence. Under R.C.2907.02, rape is defined as sexual conduct with another by force or threat of force. Under R.C. 2901.01(A), "`Force' means any violence, compulsion, or constraint, physically exerted by any means upon or against a person or thing." The threat of force may be determined from the surrounding circumstances. State v. Fowler (1985), 27 Ohio App.3d 149. The force need not be physically overt or brutal. Id.
Appellant argues that the state never established "force or threat of force." This argument is completely without merit. When appellant first took Simons upstairs, he forced her to remove her clothing to examine her to see if she had sexual intercourse with anyone. Simons stated that she had sexual intercourse with appellant because he had a gun. Also, appellant told Simons that "she owed him sex." Finally, Simons testified that appellant had previously put a gun to her head in November of 1996 and "choked and strangled" her in March of 1995. The totality of the circumstances indicate a threat of force. This court finds the testimony in the record sufficiently credible for the trier of fact to convict appellant of rape. The third assignment of error is overruled.
In the fourth assignment of error, appellant argues that his convictions for the firearm specifications related to the crimes of rape and aggravated burglary are against the manifest weight of evidence. Under R.C. 2941.145, a firearm specification in a criminal indictment must state the offender had a firearm or controlled a firearm and either "displayed the firearm, brandished the firearm, indicated the offender possessed the firearm, or used it to facilitate the offense." The firearm must be operable. R.C. 2923.11(B)(1). As appellee correctly states, proof that a firearm is capable of being fired can be based on the representations and actions of the individual controlling the gun. R.C. 2923.11(B)(2).
In this case, Simons' testimony clearly establishes that appellant brandished the gun before entering the home, showed the gun to Simons before they had sex and threatened to kill anyone in the home. Most importantly, Simons heard the gun being cocked when appellant awoke her during the early morning of February 28, 1998. Credible evidence in the record suggests the firearm was both brandished by appellant and operable. The fourth assignment of error is overruled.
The fifth assignment of error claims the conviction on the attempted kidnapping count was against the manifest weight of the evidence. Kidnapping includes restraining the liberty of another by terrorizing or inflicting serious physical harm. R.C.2905.01-(A)(3). Attempted kidnapping, like any attempt crime, requires an offender to act knowingly or purposely to "engage in conduct that, if successful, would result in the offense." R.C.2923.02(A).
There was evidence that appellant forced Simons to walk toward his van by threatening her with a gun. He told her the gun was cocked and loaded. Appellant tried on at least two occasions to shoot Simons with the gun and then struck her with it in the head resulting in severe lacerations. The trier of fact clearly believed Simons' recitation of events, which was consistent with other eyewitness testimony, and the record supports the finding of the trial court. The fifth assignment of error is overruled.
Appellant's sixth assignment of error contends that his conviction for attempted murder was against the manifest weight of the evidence. As appellant correctly states, it is axiomatic that attempted murder is a specific intent crime, requiring the perpetrator to purposefully engage in conduct which, if completed, would result in the crime of murder. State v. Fox (1981), 68 Ohio St.2d 53, 55.
On February 27, appellant told Simons any divorce would be on his terms and if he went to jail, he had "made arrangements" for someone to kill her. Also on February 27, he committed aggravated burglary and rape by threat of force with a firearm. Simons' testimony establishes that, during the March 8 incident, appellant pulled the trigger of his handgun, which was pointed at Simons' chest, at least two times. When the gun did not fire, Simons testified that appellant looked startled. The trier of fact found Simons' testimony credible and this court does not believe the conviction was against the manifest weight of the evidence. The sixth assignment of error is overruled.
In the seventh and final assignment of error, appellant argues that trial counsel provided ineffective assistance of counsel. Pursuant to Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052. The test for ineffective assistance of counsel has two elements: (1) errors committed by counsel so serious that the defendant was denied effective counsel as guaranteed by the Sixth Amendment, and which (2) prejudiced the defendant's right to a fair trial. Id.
Appellant first argues that trial counsel improperly advised him to waive a trial by jury. Whether to invoke one's right to a trial by jury is a decision constituting trial tactics of counsel, and generally is not considered ineffective assistance of counsel. State v. Phillips (1995), 74 Ohio St.3d 72, 85, certiorari denied (1996) ___ U.S. ___, 116 S.Ct. 1835. This court "must indulge a strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, at 689, 104 S.Ct. at 2065.
In this case, trial counsel explained on the record that appellant requested a bench trial because he felt these type of allegations might lead to a jury swayed by sympathy for the victim or the desire to generally "punish society ills." This position is not unreasonable and this court notes the bench trial resulted in not guilty verdicts for kidnapping and the firearm specification counts relating to the kidnapping and attempted murder counts.
Second, appellant states that trial counsel should have moved to suppress evidence recovered from appellant's van in an administrative search, including a knife and ammunition. An impounded vehicle in a criminal case can be searched, without a warrant, by police authorities "where the process is aimed at securing or protecting the car or its contents." South Dakota v. Opperman (1976), 428 U.S. 364, 373, 96 S.Ct. 3092, 3099; State v. Robinson (1979), 58 Ohio St.2d 478, 480. The police must follow a procedure that is not merely a pretext for an evidentiary search. Id. The inventory search of a vehicle serves three policy goals: (1) protecting an owner's property while it is in police custody, (2) insuring against a claim of lost, stolen or vandalized property, and (3) guarding the police from danger. South Dakota, at 369.
A review of the entire record does not indicate that the search of the van was anything other than a routine inventory search by the police. Therefore, it appears that the motion to suppress, even if one had been filed by counsel, would have been denied by the trial court. Appellant's seventh assignment of error is overruled.
Judgment affirmed.
WALSH and POWELL, JJ., concur.