[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Appellant, Pete Thompson appeals from his conviction in the Common Pleas Court of Montgomery County of carrying a concealed weapon and possession of crack cocaine pursuant to his no contest pleas.
The facts are not essentially in dispute. On September 21, 1996 at approximately 11:45 p.m. the defendant was operating his vehicle on Riverview Avenue in Dayton when he was stopped by Officer Joseph Wiesman of the Dayton Police Department for driving a car with prohibited dark tinted windows.
When Wiesman requested the defendant's driver's license, he smelled a strong odor of marijuana. Wiesman had Thompson step out of his car and walk back to Wiesman's police cruiser. After Wiesman pats down the defendant and requests that he take a seat in the cruiser, the defendant turns and pushes Officer Richard Kramer out of the way. As the defendant attempts to run away, Wiesman tackles him. After a struggle, Wiesman handcuffed the defendant and placed him in the police cruiser. Wiesman informed the defendant he was under arrest for assault on a police officer and resisting arrest.
Wiesman called for a tow truck to tow the defendant's car since the defendant was under arrest, his car was in a regular lane of travel and there were no other occupants in the car. (Tr. 12). Wiesman stated that defendant's car was towed in conformance with Dayton Police Department General Order 3.02-6. (State's Exhibit 1). In particular, Wiesman said the car was towed from the Riverview Avenue location because it was illegally parked. (Tr. 13). Wiesman stated that Officer Kraft then conducted an inventory of the defendant's car before it was removed to the impoundment lot.
Kraft testified he inventoried the defendant's car before it was towed to prevent an individual from claiming he had valuable property in his vehicle and it is now missing after it was towed. (Tr. 23). Kraft testified he removed a Smith and Wesson 9 millimeter handgun, two bags containing crack cocaine, and four bags containing marijuana. Kraft testified that if anything is left in the vehicle at the time it is towed by the towing company it is logged on a "tow screen" in the police computer. Nothing was left in defendant's vehicle.
Appellant raised one assignment of error, to wit:
 THE TRIAL COURT ERRED IN FAILING TO SUSTAIN THE SUPPRESSION MOTION BECAUSE THE STATE FAILED TO PROVE THAT THE CAR SEARCH HERE FELL WITHIN THE INVENTORY SEARCH EXCEPTION TO THE WARRANT REQUIREMENT OF THE FOURTH AMENDMENT.
Appellant contends the "inventory" search conducted by the police was not a reasonable search because the defendant's vehicle was searched prior to its impoundment, the inventory was not conducted as a result of valuables being seen in plain view, and the State failed to prove that it had no alternative but to tow the defendant's vehicle.
In South Dakota v. Opperman (1976), 428 U.S. 364, the United States Supreme Court held that automobile inventory searches are reasonable, and therefore lawful, under the Fourth Amendment. The Court indicated that routine police inventories are justified to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger.
The factors in Opperman that tipped the balance in favor of the state's position were (1) the automobile was lawfully impounded; (2) the inventory was conducted after impoundment; (3) the owner was not present to make other arrangements for the safekeeping of the vehicle; (4) the inventory was prompted by valuables in plain view and was pursuant to standard police procedure; and (5) the inventory was not a pretext to conceal an investigatory search.
In Colorado v. Bertine (1987), 479 U.S. 369, the Supreme Court held there was no merit to the contention that the search of a defendant's van pursuant to an inventory search was unconstitutional because departmental regulations gave the police discretion to choose between impounding the van and parking and locking it in a public place. The exercise of police discretion is not prohibited so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.
In Bertine, a police officer arrested the defendant for driving under the influence of alcohol. After Bertine was taken into custody and before arrival of a tow truck a backup officer inventoried the contents of the defendant's van.
Chief Justice Rehnquist delivered the opinion of the court and noted the following at pages 373 and 374 of the opinion:
 The Supreme Court of Colorado also expressed the view that the search in this case was unreasonable because Bertine's van was towed to a secure, lighted facility and because Bertine himself could have been offered the opportunity to make other arrangements for the safekeeping of his property. But the security of the storage facility does not completely eliminate the need for inventorying; the police may still wish to protect themselves or the owners of the lot against false claims of theft or dangerous instrumentalities. And while giving Bertine an opportunity to make alternative arrangements would undoubtedly have been possible, we said in Lafayette:
 "[T]he real question is not what `could have been achieved,' but whether the Fourth Amendment requires such steps. . . .
 "The reasonableness of any particular governmental activity does not necessarily or invariably turn on the existence of alternative `less intrusive' means." Lafayette, 462 U.S., at 647 (emphasis in original). See Cady v. Dombrowski, supra,
at 447; United States v. Martinez-Fuerte, 428 U.S. 543, 557, n. 12 (1976). We conclude that here, as in Lafayette, reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure.
In State v. Peagler (1996), 76 Ohio St.3d 496, 501 the Ohio Supreme Court cited Bertine in noting that the exact location of the inventory search is not critical to effectuating its purpose, and therefore a search conducted prior to impoundment may be reasonable.
In this case, Dayton Police Procedures provide that prior to towing any motor vehicle, the officer is to conduct an inventory of the vehicle's contents and complete the Tow-In card. Officer Kraft acted in conformance with that standard police department policy.
The inventory was also proper despite appellant's contention that there were no potentially valuable, dangerous, or criminal items in "plain view." An inventory search serves the strong governmental interests in protecting an owner's property while it is in police custody, insuring against claims of lost, stolen, or vandalized property, and guarding the police from danger.Colorado v. Bertine, supra.
Most valuable items in an automobile are not in "plain view." An officer should reasonably be permitted to find those items and secure them for the owner of the property. Likewise, dangerous items may also not be in plain view, but must be discovered and removed to protect the police and the towing company employees. Accordingly, the appellant's assignment of error is overruled.
The judgment of the trial court will be Affirmed.
YOUNG, P.J., and GRADY, J., concur.
Copies mailed to:
Karyn J. Lynn
John H. Rion
Hon. James Gilvary