EGAN, C. J., dissenting.
The majority holds that, because of the Supreme Court's opinion in Atkinson , an officer does not violate Article I, section 9, of the Oregon Constitution when, in the course of impounding a vehicle, the officer fails to ask the driver, who is still present at the scene, whether she would like to remove items from the vehicle. 296 Or. App. at 71, 437 P.3d at 263. I would conclude that officers are constitutionally *266 required to make such an inquiry before beginning an inventory. The majority's holding makes it per se unreasonable for an individual, who has been stopped by police and ordered out of a vehicle, to believe that they cannot remove items from their vehicle before exiting. In so holding, the majority diminishes the state's threshold burden to prove that police, in conducting a warrantless search, do not violate citizens' rights. Therefore, I dissent. *76 My disagreement with the majority's reading of Atkinson frames my dissent. First, the majority briefly and conclusorily notes that the Oregon Supreme Court has recognized three principal purposes that are often put forward to justify inventories of the contents of impounded vehicles. 296 Or. App. at 68, 437 P.3d at 261-62. Second, the majority appears to hold that, so long as three "conditions" are met, police conduct is inherently reasonable for purposes of Article I, section 9. As explained below, primarily because of these two points, I find the majority's reading flawed for lack of nuance.
To begin, the majority correctly states that there are three principal justifications often put forth to support governmental policies of inventorying impounded personal property. However, in quickly assuming that these justifications remain valid, the majority ignores the fact that each has been questioned. Indeed, Justice Roberts' dissent in Atkinson itself noted that "[i]nventory searches of automobiles for non[ ]investigatory reasons are not new" and that "the justifications upon which [they are] premised have been criticized often." Atkinson , 298 Or. at 17, 688 P.2d 832 (Roberts, J., dissenting). A further examination of each justification reveals that the underpinnings of the inventory exception to the warrant requirement are not-and should not be-settled reasons to be glossed over when analyzing the contours of the exception.
The first justification is that inventories supposedly "protect the owner's property while in police custody." 296 Or. App. at 67, 437 P.3d at 261. However, as the dissent noted in Atkinson , not consulting an individual regarding whether they would like their property kept safe by police "makes a mockery of the claim that the search is in the interest of protecting his personal property" as it "would be small comfort to go to the penitentiary, reassured that you are there only because the police were adamant in protecting you from petty theft regardless of whether you wished such protection." Atkinson , 298 Or. at 17, 688 P.2d 832 (Roberts, J., dissenting) (quoting Moylan, The Inventory Search of an Automobile: A Willing Suspension of Disbelief , 5 U. Balt. L. Rev. 203, 219-20 (1976)). Other critics have noted that there "are other equally or more effective methods in securing property other than a warrantless inventory search"-such as sealing and storing containers *77 inside the vehicle. State v. Ingram , 914 N.W.2d 794, 818 (Iowa 2018).
The second justification is that inventories "reduce the risk of and tend to prevent the assertion of false claims against police." 296 Or. App. at 67, 437 P.3d at 261. However, there is a lack of evidence-indeed, the state has presented no evidence-showing that these claims are a real threat. See Ingram , 914 N.W.2d at 817 ("The mere theoretical possibility of a rare and in almost all cases unsuccessful claim of theft cannot overcome the substantial expectation of privacy an owner or driver has in the contents of an automobile.") Moreover, conducting an inventory does not necessarily prevent such claims. See South Dakota v. Opperman , 428 U.S. 364, 378-89, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976) (Powell, J., concurring) (noting that claimants could allege that the missing items were stolen prior to the inventory).
The final justification is that, in some circumstances, inventories "reduce physical danger to police officers and others." 296 Or. App. at 67, 437 P.3d at 261. However, according to the Supreme Court in Atkinson , this is only a danger "in the occasional case" and "[r]eliance on this reason must have a concrete basis in specific circumstances; it may not simply be assumed as a basis of a general precautionary practice." 298 Or. at 7-8, 688 P.2d 832. Thus, this purpose certainly cannot be put forth to broadly justify all governmental inventories.
Moreover, I note that Atkinson was far from a full-fledged endorsement of these justifications.
*267 In introducing the "principal purposes," the Supreme Court stated that they "often are put forward" to justify inventories. 298 Or. at 7, 688 P.2d 832. After explaining the justifications, the court concluded that "[i]f the responsible policy makers decide that protective reasons of this nature justify prescribed procedures for inventorying the contents of an impounded vehicle, such a policy is not inherently 'unreasonable[.]' " Id. at 8, 688 P.2d 832. The court did not hold that the purposes "often put forward" actually justify police inventories. Nor did the court hold that every policy enacted pursuant to these justifications would be constitutional. Rather, the court held that, should responsible policy makers conclude that such purposes justified prescribing a policy for inventories, policy makers are not *78 constitutionally foreclosed from doing so. But to say that inventory policies "have been justified" for the above reasons severely oversimplifies the matter and neglects our role in assuring that "inventory searches" do not become licenses for police to conduct warrantless investigatory searches.
I also disagree with the majority's conclusion that, in describing three conditions for an inventory policy, the Supreme Court authorized any inventory so long as those three conditions are met. 296 Or. App. at 67-68, 437 P.3d at 261-62. In fact, the Supreme Court set forth a construct under which a search conducted pursuant to an inventory policy is not "inherently unreasonable." Those conditions are that (1) the vehicle is lawfully in police custody, (2) the inventory policy is properly authorized and "designed and systematically administered so that the inventory involves no exercise of discretion" by police, and (3) the officer directing or taking the inventory does "not deviate from the established policy or procedures." 296 Or. App. at 68, 437 P.3d at 261-62. The majority correctly quotes Atkinson , but does so slightly out of context, and it draws a broad conclusion that Atkinson does not.
First, the Supreme Court was not focused on the reasonableness of conducting an inventory. Rather, the court's discussion centered on how to determine if an inventory policy was reasonable under Article I, section 9. See Atkinson , 298 Or. at 8, 688 P.2d 832 (noting that "a policy is not inherently 'unreasonable' within the meaning of Article I, section 9, if it complies with [three conditions]" (emphasis added)). Second, and more importantly, the Supreme Court did not say that a policy's compliance with the three conditions meant that an inventory conducted pursuant to that policy would be inherently reasonable . Rather, the court outlined the three conditions as a threshold: an inventory search is not inherently unreasonable if those conditions are met. In this case, the majority concludes that the three conditions were met, and states that to inquire further into the reasonableness of the inventory would be inconsistent with Atkinson . 296 Or. App. at 70-71, 437 P.3d at 262-63. In so concluding, the majority turns the Atkinson threshold for reasonableness into an end post.
*79 The majority further concludes that defendant's proposed rule-that officers ask a driver whose car is impounded whether they would like to remove personal items-"seems inconsistent" with Atkinson . 296 Or. App. at 71, 437 P.3d at 263. That conclusion is based only on the fact that the policy passed the three-pronged threshold test of Atkinson and the majority's conclusion that our analysis is foreclosed at that stage. As I read Atkinson , whether an inventory satisfies the threshold conditions is not the end of our inquiry; at that stage, we may only conclude that the inventory was not "inherently unreasonable." Thus, even if all three conditions are met, we still must determine whether the inventory was "reasonable" for purposes of Article I, section 9. For example, we must determine whether the inventory "was conducted pursuant to a properly authorized program designed and systematically administered to achieve the stated purpose ." Atkinson , 298 Or. at 11, 688 P.2d 832 (remanding because the answer to that question was unclear (emphasis added)). We must do so, of course, because this was a warrantless search of a citizen's property-the sort of search that is only lawful if the state proves that it "did not violate a protected interest of the defendant." State v. Tucker , 330 Or. 85, 88-89, 997 P.2d 182 (2000) (emphasis in original).
*268 By rejecting defendant's rule and cutting our Article I, section 9, analysis of the search short, the majority assists the state in allowing a warrantless search based on a conveniently adjacent exception to the warrant requirement. It is well established that the state has the burden to prove that a warrantless search does not violate a defendant's right to be free from unreasonable searches because the search fell "within one of the few specifically established and carefully delineated exceptions to the warrant requirement." State v. Pilgrim , 276 Or. App. 747, 750, 369 P.3d 434 (2016) (emphasis added). The state often seeks to diminish the burden it bears by espousing noble motivations that justify turning those "few" "carefully delineated" exceptions into numerous, amorphous reasons to intrude on citizens' right to be secure against unreasonable searches and seizures. In this case, the state uses its inherent authority to cut directly at that right, thus eviscerating its own burden.
*80 Finally, while I agree with the majority that it is not our role to make policy decisions, I believe the majority's view neglects our role "to assure that such policies and procedures as are adopted do not violate constitutional guarantees." Atkinson , 298 Or. at 6, 688 P.2d 832. A policy's compliance with the Atkinson conditions does not guarantee that police do not violate an individual's Article I, section 9, right. As this case demonstrates, police can follow a constitutional policy, yet still violate that right. Here, the police did so by using their mere presence and inherent authority to mislead defendant about her undisputed right to take personal items with her before police began the inventory. Because it is reasonable for an individual to feel inclined or obliged to cooperate with police, I would hold that police always must advise individuals of their right to take property with them prior to an inventory of their vehicle.
The majority ultimately reaches its holding by concluding that defendant's purse was not "seized" and that therefore, officers did not violate defendant's right to be free from warrantless search and seizure. In doing so, the majority applies our case law from when a person is "seized" and thus fails to take into account the complicated moment when a driver is asked to exit a vehicle that police intend to impound and inventory. The majority acknowledges that at the moment when defendant was instructed to exit her car, she had the right to take her purse with her. 296 Or. App. at 68-69, 437 P.3d at 261-62. The majority also purports to "agree with defendant that, in that moment, an officer could engage in conduct that would unlawfully interfere with the person's right to remove personal belongings from the vehicle[.]" 296 Or. App. at 73, 437 P.3d at 264-65. However, the majority concludes that because in this case, the police did nothing more than physically locate them-selves on each side of defendant's car, a "reasonable person" would not believe she was prohibited from reaching around her car to retrieve personal items. 296 Or. App. at 74, 437 P.3d at 265. The majority essentially posits that if defendant felt pressure to get out of the car without removing or asking to remove her purse, it was due to the officers' inherent authority, not any specific act of restraint or show of authority by the police. 296 Or. App. at 73-74, 437 P.3d at 264-65.
*81 It is not disputed that police have such "inherent authority"; nor is it disputed that it is reasonable for an individual to feel inclined or obliged to cooperate with police requests. 296 Or. App. at 74, 437 P.3d at 265. The majority concludes that, because under State v. Anderson , 354 Or. 440, 450, 313 P.3d 1113 (2013), police must add to those inherent pressures in a police-citizen encounter in order to seize a person, the officer in this case would have also had to do something "more" in order to seize defendant's property. Anderson , 354 Or. at 450, 313 P.3d 1113 ; 296 Or. App. at 74-75, 437 P.3d at 265-66. However, this case is not about the seizure of a person, nor is it about a seizure during an ordinary police-citizen encounter. This case is about the seizure of property in a vehicle; property which defendant had a constitutional right to remove and take with her. In my view, this case is about whether we allow police to use their inherent authority to mislead individuals about that right.
The majority acknowledges that the rule defendant requests-that in the course of *269 impounding a vehicle, the officer must ask a driver still present at the scene whether she would like to remove items from the vehicle-would serve the purposes of an inventory. 296 Or. App. at 69, 437 P.3d at 262. Several Oregon jurisdictions have realized as much and adopted this policy on their own. 296 Or. App. at 69-70, 437 P.3d at 262-63 (quoting City of Prineville ordinance and Deschutes County inventory policy). Indeed, the majority states that "there is no legally valid reason not to want people to know that they are free to remove items from a vehicle before it is impounded." 296 Or. App. at 69, 437 P.3d at 262. I agree with this statement, and I fail to see how Atkinson prohibits us from ensuring that police do not confuse or infringe that right. Therefore, I would hold that police are constitutionally required to inform individuals still present at the scene of their right to remove items from their vehicle before an inventory begins.
I respectfully dissent.